450 So.2d 1191 (1984)
Ruby Lee LOVE, Appellant,
v.
STATE of Florida, Appellee.
No. 83-1213.
District Court of Appeal of Florida, Fourth District.
May 9, 1984.
Rehearing Denied June 27, 1984.
Stephen D. Jerome, Lighthouse Point, for appellant.
Jim Smith, Atty. Gen., Tallahassee, and Bruce M. Lee, Asst. Atty. Gen., West Palm Beach, for appellee.
*1192 BERANEK, Judge.
This is a rather bizarre case presenting the issue of whether or not the battery statutes of Florida protect an unborn fetus.
On June 5, 1982, Linda Whiteside was shot by the defendant. At the time of the shooting, the victim was seven and one-half months pregnant. The bullet struck her in the lower abdomen and entered the head of the fetus in her womb. Doctors were successful in saving the life of the mother and the fetus. The fetus was removed from the mother's body with the bullet still lodged in its head. Approximately two months after the birth by cesarian section, the bullet was removed. The defendant was charged with attempted second degree murder of Linda Whiteside, aggravated battery against Linda Whiteside, aggravated battery against an unborn male fetus, and the use of a firearm during the commission of the felony. The trial occurred approximately ten months after the shooting and the baby, alive and apparently physically well, was present in the courtroom. The defendant was convicted of attempted manslaughter of the mother, two counts of aggravated battery, and possession of a firearm while engaged in a criminal offense. She was sentenced to fifteen years on each battery count. The defendant's appeal relates to the offense of battery on an unborn fetus.
We start with the assumption that the facts presented in the instant case certainly should constitute a crime in this State. Obviously, Florida should prohibit all non-consensual violent acts against the mother of an unborn child which result in injury to the fetus. The question here is simply whether the Florida Legislature did specifically proscribe this conduct within the confines of the battery statutes. Section 784.045, Florida Statutes (1981), defines aggravated battery:
784.045 Aggravated battery
(1) A person commits aggravated battery who, in committing battery:
(a) Intentionally or knowingly causes great bodily harm, permanent disability, or permanent disfigurement; or
(b) Uses a deadly weapon.
(2) Whoever commits aggravated battery shall be guilty of a felony of the second degree, punishable as provided in § 775.082, § 775.083, or § 775.084.
This statute refers to the general battery statute in its definition. Battery is defined in Section 784.03, Florida Statutes (1981):
784.03 Battery
(1) A person commits battery if he:
(a) Actually and intentionally touches or strikes another person against the will of the other; or
(b) Intentionally causes bodily harm to an individual.
(2) Whoever commits battery shall be guilty of a misdemeanor of the first degree, punishable as provided in § 775.082, § 775.083, or § 775.084.
Appellant contends that the victim of a battery must be a "person" and that an unborn fetus is not a person within the battery statute. The word "person" is defined in Section 1.01, Florida Statutes (1981), and nowhere are the unborn included despite the fact that "children" are mentioned.
1.01 Definitions
In construing these statutes and each and every word, phrase, or part hereof, where the context will permit:
(1) The singular includes the plural and vice versa.
(2) The masculine includes the feminine and neuter and vice versa.
(3) The word "person" includes individuals, children, firms, associations, joint adventures, partnerships, estates, trusts, business trusts, syndicates, fiduciaries, corporations and all other groups or combinations.
In construing this statute and its applicability to an unborn fetus, we are directed by the legislative rules of construction found in Section 775.021, Florida Statutes (1981), which provide:
775.021 Rules of construction
(1) The provisions of this code and offenses defined by other statutes shall be strictly construed; when the language is *1193 susceptible of differing constructions, it shall be construed most favorably to the accused.
Viewing the battery statute "most favorably to the accused," we initially conclude on the basis of this brief statutory review that the omission of a "fetus" from the battery statute, and from the definition statute, constitutes an indication that the Legislature did not intend to include a fetus within the statutory protection.
This position is also supported by resort to Section 782.09, Florida Statutes (1981), which provides as follows:
782.09 Killing of unborn child by injury to mother
The willful killing of an unborn quick child, by any injury to the mother of such child which would be murder if it resulted in the death of such mother, shall be deemed manslaughter, a felony of the second degree, punishable as provided in § 775.082, § 775.083, or § 775.084.
This statute specifically deals with an unborn quick child. The inclusion of this language is an obvious indication that the Legislature was mindful of protecting the unborn but only under the specific circumstances set out in the statute. It is noteworthy that even this statute does not make it a crime to willfully kill an unborn quick child by an act against the mother unless that act would have been murder had the mother died. Since the jury in the case at bar concluded that the defendant was not guilty of attempted murder against the mother, it would appear that no crime under this statute would have been committed had the fetus died.
We conclude that since the Legislature made specific reference to the unborn dealing with the death of the fetus, the absence of such a statute dealing with a battery on a fetus indicates an intention not to include the unborn within the protection of the battery statutes. The absence of a specific statute protecting a fetus from a battery is not at all surprising. The Florida battery statute requires an actual touching. Suffice it to say that few ever thought in terms of such a crime against a fetus being committed outside the context of criminal abortion.
We are mindful of the United States Supreme Court's exhaustive treatment regarding the rights of the unborn, the State, and the mother of the unborn, in the landmark decision of Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973). In that case, the United States Supreme Court employed a balancing concept between the mother's right to privacy and the State's interest in safeguarding prenatal life in determining the unconstitutionality of certain anti-abortion statutes. The Court specifically rejected the argument that the fetus is a "person" within the language and meaning of the Fourteenth Amendment. The opinion notes that no case "holds that a fetus is a person within the meaning of the Fourteenth Amendment." After exhaustive study and consideration, the Court concludes at page 729:
All this, together with our observation, supra, that throughout the major portion of the 19th century prevailing legal abortion practices were far freer than they are today, persuades us that the word "person," as used in the Fourteenth Amendment, does not include the unborn. This is in accord with the results reached in those few cases where the issue has been squarely presented. [Citations omitted, emphasis supplied.]
In conclusion, we hold that the word "person" as used in Sections 784.03 and 784.045, the Florida battery statutes, does not include the unborn fetus. The State of Florida may certainly protect the mother and the unborn fetus from violence of the sort involved in this case and legislation to this effect is encouraged. We hold only that the existing battery statutes do not enunciate this protection.
The conviction and sentence for the aggravated battery upon a fetus is thus reversed and vacated. The above disposition makes it unnecessary for us to address any of the other points raised on appeal.
REVERSED.
ANSTEAD, C.J., and LETTS, J., concur.