585 So.2d 1140 (1991)
STATE of Florida, Appellant,
v.
Cassandra GETHERS, Appellee.
No. 89-2961.
District Court of Appeal of Florida, Fourth District.
September 18, 1991.
Robert A. Butterworth, Atty. Gen., Tallahassee, and John M. Koenig, Jr., Asst. Atty. Gen., West Palm Beach, for appellant.
Russell B. Adler, Fort Lauderdale, for appellee.
Charles M. Auslander, Fine, Jacobson, Schwartz, Nash, Block & England, Miami, for amicus curiae American Civ. Liberties Union.
DOWNEY, Judge.
The State of Florida appeals from an order of the trial court granting appellee, Cassandra Gethers', motion to dismiss an information charging Cassandra with aggravated *1141 child abuse. The criminal conduct giving rise to the charge was permitting her unborn child to be injured by Cassandra's introducing cocaine into her own body during the gestation period of her unborn child.
Upon being informed against for child abuse by violating section 827.04(1), Florida Statutes (1987),[1] by allegedly injuring her unborn child as a result of Cassandra's use of cocaine during the gestation period of such child, Cassandra moved to dismiss the information on grounds that the alleged conduct was not criminalized by the cited statute. The trial court, relying upon this court's case of Love v. State, 450 So.2d 1191 (Fla. 4th DCA 1984), agreed and dismissed the information.
The state contends that the child abuse statute was amended in response to this court's ruling in Love, and other similar cases, to include in the reach of its protection not only harm to living children, but also injuries to the unborn child sustained during gestation.
In support of that argument, the state refers to correspondence between a member of the legislature, Representative Fred Lippman, and the State Attorney General in which Lippman requested an opinion from the Attorney General as to whether the then existing law on child abuse would include babies born addicted to cocaine and other illegal drugs. If not, the legislator announced his intention to introduce legislation to criminalize such harm to a fetus. The Attorney General advised that the present status of the law was that the child abuse statutes did not include protection for unborn fetuses. Thus, he recommended the enactment of specific legislation to cover the subject.
The state argues that, as a result of the foregoing, the legislature expanded the definition of "harm" by amending section 415.503 to include the physical dependency of a "newborn infant" upon a controlled substance. Although said amendment also provided that the parent of a newborn infant born with a drug dependency cannot be subject to criminal investigation solely due to the infant's drug dependency, the state contends that provision was somehow nullified by section 415.511(1)(b), which provides:
[N]othing contained in this section shall be deemed to grant immunity, civil or criminal, to any person suspected of having abused or neglected a child, or committed any illegal act upon or against a child.
Cassandra contends that the state's statutory analysis is both legally infirm and inconsistent with the policies that underlie the civil and criminal laws on child abuse. It is her position that, following his communication with the Attorney General, Representative Lippman introduced H.B. 155, which expanded the meaning of "harm," constituting child abuse or neglect, to provide protective services to include "injury" to a newborn infant as a result of being born drug dependent. However, the bill was twice amended before enactment. See Comment, A Response to "Cocaine Babies"  Amendment of Florida Child Abuse and Neglect Laws to Encompass Infants Born Drug Dependent, 15 Fla. S.U.L.Rev. 865 (1987). The first amendment eliminated the use of the phrase, "injury sustained by a newborn infant as a result of being born drug dependent," and replaced it with "physical dependency of a newborn infant upon any drug." This, according to Spitzer's article, noted above,
addressed concerns that the "injury sustained" language, by suggesting that fetuses are capable of receiving injuries, would redefine the term "child" under Florida's abuse and neglect statutes to include the unborn. By focusing solely on the newborn's condition, rather than *1142 acts affecting the fetus generally, the amended language avoids any unintended granting of legal status to the unborn and thereby impermissibly invading "the constitutional protection a woman has in deciding what to do about a pregnancy."
Id. at 877.
The second amendment to the Lippman bill was the elimination of provisions that authorized the criminal prosecution of a mother who gives birth to a drug dependent child. According to Spitzer, concern over the criminalization of the mother's prenatal conduct precipitated the inclusion of the provision "that no parent of [a drug dependent] newborn infant shall be subject to criminal investigation solely on the basis of such infant's drug dependency." Id. at 878. Apropos these concerns, Representative Lippman is quoted as advising the legislative committee considering the bill that "there was a well-founded anxiety that we were looking to arrest moms. We are not looking to do that," but "to intervene ... [to] try to bring the family back together." Id. We note in passing that House Bill 536, another unsuccessful attempt at criminalizing the birth of a drug dependent newborn, never made it out of committee. Id. at 881-882.
In Johnson v. State, 578 So.2d 419 (Fla. 5th DCA 1991), the majority concluded the appellant mother was guilty of violating section 893.13(1)(c), Florida Statutes (1989). In a special concurrence, Judge Cobb expressed the view that the current law regarding violation of the child abuse statute does not reach the unborn fetus, stating:
The fact that the legislature has elected not to criminalize the transmission of cocaine to a fetus cannot alter the fact that it has criminalized transmission to a person, and the recipients of the cocaine in the instant case, beyond any legal disputation, were persons as defined by the law of Florida.
Id. at 420. In a well articulated dissent, Judge Sharp concluded:
My review of other pertinant [sic] legislative enactments, specifically chapter 415, leads me to conclude in this case that the Legislature expressly chose to treat the problem of drug dependent mothers and newborns as a public health problem and that it considered but rejected imposing criminal sanctions, via section 893.13(1)(c)1.
... .
From this legislative history, it is clear that the Legislature considered and rejected a specific statutory provision authorizing criminal penalties against mothers for delivering drug-affected children who received transfer of an illegal drug derivative metabolized by the mother's body, in utero. In light if this express legislative statement, I conclude that the Legislature never intended for the general drug delivery statute to authorize prosecutions of those mothers who take illegal drugs close enough in time to childbirth that a doctor could testify that a tiny amount passed from mother to child in the few seconds before the umbilical cord was cut. Criminal prosecution of mothers like Johnson will undermine Florida's express policy of "keeping families intact" and could destroy the family by incarcerating the child's mother when alternative measures could protect the child and stabilize the family. Comment, A Response to "Cocaine Babies", 15 Fla. S.U.L.Rev. at 881.
Id. at 423, 424. Judge Sharp's opinion goes on to point out the consistent stand across the county against criminalizing the conduct charged in this case.
If the foregoing analysis of the statutes and case law espoused by Cassandra and the Amicus's brief filed herein is correct, and we believe it is, then the state has misconstrued the effect of that law. To adopt the state's construction would seem to be at odds with what appears to be the public policy of the state regarding child abuse and neglect set forth in section 415.502 directing the Department of Health and Rehabilitative Services to "preserve the family life of the parents and children, to the maximum extent possible, by enhancing the parental capacity for adequate child care." Adverting to Representative Lippman's statement to the legislative committee, we notice once again the thrust is *1143 toward keeping the newborn child with its mother and family.
Finally, we quote once again from Spitzer's Law Review article in which he recognizes this public policy in saying:
Criminally prosecuting mothers who give birth to drug dependent babies conflicts with the public policy underlying Florida's child welfare laws. The Florida Legislature's paramount concern in providing comprehensive protective services for abused and neglected children is "to preserve the family life of the parents and children, to the maximum extent possible, by enhancing the parental capacity for adequate child care." Criminal prosecution would needlessly destroy the family by incarcerating the child's mother when alternative measures could both protect the child and stabilize the family.
Potential criminal liability would also encourage addicted women to terminate or conceal their pregnancies. For example, to avoid being reported by medical personnel, who would have a statutory duty to do so, a pregnant addict might refrain from obtaining proper prenatal and postnatal care. She might even deliver without medical assistance, thereby risking injury and death to both herself and the child. Finally, fear of prosecution could deter pregnant drug abusers from seeking treatment for drug problems.
15 Fla.S.U.L.Rev. at 881.
In view of the foregoing, we affirm the order appealed from.
GLICKSTEIN, C.J., and HERSEY, J., concur.
NOTES
[1] Section 827.04(1), Florida Statutes (1987), provides:

(1) Whoever, willfully or by culpable negligence, deprives a child of, or allows a child to be deprived of, necessary food, clothing, shelter, or medical treatment, or who, knowingly or by culpable negligence, permits physical or mental injury to the child, and in so doing causes great bodily harm, permanent disability, or permanent disfigurement to such child, shall be guilty of a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.