FIFTH DIVISION

December 31, 1997

No. 1-96-2316

In re
 FETUS BROWN  )    

  )        

(The People of the State of Illinois,  )        Appeal from

  )     the Circuit Court

Petitioner-Appellee,  )      of Cook County.

  )     

v.  )

  ) 

Darlene Brown,  )      No. 96-JA-03312

  )     

Respondent-Appellant,  )

  )

and  )         Honorable

  )   William F. Ward, Jr.,

The Public Guardian of Cook County,  )      Judge Presiding.

  )

Respondent-Appellant/Cross-Appellee).)

JUSTICE THEIS delivered the opinion of the court:

The issue before this court is whether a competent, pregnant woman's right to refuse medical treatment, which, in this case involves religiously offensive blood transfusions, may be overridden by the State's substantial interest in the welfare of the viable fetus.

The tensions present in this issue are palpable.  Questions of morality and legality converge, requiring consideration of the obligations of a pregnant woman and of the State.  As a court, we are asked to determine the proper balance of the mother's common law and  constitutional interests in bodily self-determination as against the State's recognized interest in protecting the viable fetus.  The facts of this difficult case are as follows. 

On June 26, 1996, Darlene Brown, then 26 years old, was 34-3/7 weeks pregnant.  After consulting with her treating physician, Dr. Robert Walsh, Brown was admitted into Ingalls Memorial Hospital in Harvey, Illinois, to have a cystoscopy and then to remove a urethral mass.  Brown was anticipated to lose 100 cubic centimeters of blood due to the procedure.  Before the surgery, Brown did not discuss with Dr. Walsh that she was a Jehovah's Witness.  

During the surgery, Brown lost more blood than anticipated.  After Brown lost approximately 700 cubic centimeters of blood, Dr. Walsh ordered three units of blood for transfusion.  Once the blood arrived in the operating room, Brown, who was fully conscious and alert during the procedure, refused the blood, explaining that she was a Jehovah's Witness.  The doctors believed Brown was competent to refuse the blood and they completed the surgery using other techniques to control her bleeding.  By the end of the surgery, Brown had lost almost 1,500 cubic centimeters of blood.

After the surgery, Brown had a hemoglobin level of 4.4 grams per deciliter.  A hemoglobin level of 9 to 11 or 12 grams per deciliter would be normal for a woman at this stage of pregnancy.  Brown's hemoglobin level continued to drop.  The morning of the court hearing, Brown's hemoglobin level was 3.4.  Dr. Walsh explained that Brown's low hemoglobin level and the abrupt change in that level posed a significant, life-threatening risk both to Brown and to the fetus.  After consulting with Brown and her husband, Lester Brown, as well as physicians at other hospitals, Dr. Walsh attempted to use alternative medical procedures, compatible with the beliefs of Jehovah's Witnesses, to raise Brown's hemoglobin level.  Unfortunately, Brown's hemoglobin level continued to drop.  Dr. Walsh spoke with numerous hematologists and oncologists.  Dr. Walsh also spoke with a renowned researcher about other possible treatments.  At the time of the hearing, it was Dr. Walsh's medical opinion that if Darlene Brown did not have a blood transfusion, her chances of survival, as well as those of the fetus, were only 5%.

On June 28, 1996, the State filed a petition for adjudication of wardship and a motion for temporary custody of Baby Doe, a fetus.  Both were filed pursuant to the Illinois Juvenile Court Act of 1987.  705 ILCS 405/1-1 
et
 
seq.
 (West 1996).  A hearing was held the same day.  Although Brown contends that she was never served, the Browns were represented by counsel at the hearing and Lester Brown was present.  The court began by appointing the public guardian of Cook County, over his objection, to represent the fetus (Fetus Brown).  Next, uncertain as to jurisdiction under the Juvenile Court Act, the court found it inappropriate to proceed under the State's petition for adjudication of wardship.  Thus, invoking the court's equitable powers, the State filed a "Petition for Hearing on Whether a Temporary Custodian can be Appointed to Consent to a Medical Procedure:  To Wit Blood Transfusion." 

At the hearing, the State called Dr. Robert Walsh, Darlene's treating physician, and Kurt Johnson, the hospital administrator.  Dr. Walsh testified to the facts of Darlene Brown's condition as indicated above.  Dr. Walsh also stated that, from the blood transfusion, Darlene Brown had a 1 in 1,000 risk of contracting hepatitis and a 1 in 5,000 or 10,000 risk of contracting HIV.  Dr. Walsh explained that the blood transfusion was necessary, not to get blood to the fetus, but rather to get oxygen to the placenta via the mother's blood.  Dr. Walsh explained that, while there were other methods of oxygenation, the problem was that the maternal blood was the only medium for transporting the oxygen to the placenta.  

The State then called Kurt Johnson, the senior vice-president and chief operating officer of Ingalls Memorial Hospital.  Johnson testified that he was aware of the situation and of Dr. Walsh's medical opinion.  Johnson also testified that he was prepared to accept temporary custody of the fetus in order to consent to the blood transfusion.

The parties stipulated that, if called to testify, Lester Brown would confirm that Darlene Brown understood the risks to herself and the fetus if she did not accept the blood transfusion.  The parties further stipulated that Lester Brown supported Darlene Brown's decision not to accept the blood transfusion.  At the time of the hearing, the Browns had been married for two years and both worked to take care of Darlene's eight-year-old and three-year-old daughters.  The parties also stipulated that, if anything happened to Darlene Brown, Lester would continue to take care of the two surviving children and both Darlene's and Lester's parents would be available for care and support of the children.  The Browns then rested.

The trial court granted the State's petition and appointed the hospital administrator as "temporary custodian of Fetus Brown, with the right to consent to one or more blood transfusions for Darlene Brown, when advised of such necessity by any attending physician."  In so holding, the trial court relied on the Illinois appellate decision in 
In re Baby Boy Doe
,
 260 Ill. App. 3d 392, 398, 632 N.E.2d 326, 330 (1994), as well as the Illinois Supreme Court decision in 
Stallman v. Youngquist
, 125 Ill. 2d 267, 531 N.E.2d 355 (1988).  The court granted the State's petition and appointed the hospital administrator as temporary custodian of Fetus Brown, with the right to consent to any and all blood transfusions for Darlene Brown when advised of such necessity by any attending physician.  As alleged in the Browns' later pleadings, Darlene Brown was transfused with six units of packed red blood cells beginning on the night of June 28 and continuing to approximately noon on June 29.  Further, Darlene Brown tried to resist the transfusion and the doctors "yelled at and forcibly restrained, overpowered and sedated" her.

On July 8, 1996, the court held a status hearing and found that Darlene Brown had delivered a healthy baby (Baby Doe Brown) on July 1, 1996, and that both baby and mother had been discharged from the hospital.  The court then vacated the temporary custody order, dismissed the State's petition, and closed the case.   

Appellant, Darlene Brown, filed a notice of appeal on July 25, 1996, pursuant to Supreme Court Rule 301 (155 Ill. 2d R. 301), appealing from the circuit court's order appointing a temporary custodian for the fetus with the ability to consent, on Darlene Brown's behalf, to a blood transfusion for the viable fetus.  Appellant, Patrick T. Murphy, the public guardian of Cook County, Illinois, filed a separate notice of appeal on July 8, 1996, pursuant to Supreme Court Rule 303 (155 Ill. 2d R. 303), appealing from the circuit court's later order vacating temporary custody and dismissing the State's petition.  The public guardian challenges the trial court's order appointing the public guardian to represent the interests of the viable fetus.  As appellee, the State only challenges the issues raised on appeal by Darlene Brown.  For the following reasons, we find that the trial court erred in appointing a temporary custodian for Fetus Brown with the ability to consent on behalf of Darlene Brown to a blood transfusion for the viable fetus.

We note that the factual controversy has been resolved.  Darlene Brown received the blood transfusions on June 28-29, 1996, and delivered a healthy baby on July 1, 1996.  
While the factual issues are moot, the remaining legal issue satisfies the public policy exception to the Illinois mootness doctrine.  
People ex rel. Wallace v. Labrenz
, 411 Ill. 618, 622, 104 N.E.2d 769, 772 (1952).  The issue is a public one requiring authoritative determination for the future guidance of public officials, especially given the emergency and expedited nature of such proceedings.  
Labrenz
, 411 Ill. at 622, 104 N.E.2d at 772.  The Illinois Supreme Court has issued opinions in three blood transfusion cases despite potential mootness considerations.  
In re E.G.
, 133 Ill. 2d 98, 549 N.E.2d 322 (1989); 
In re Estate of Brooks
, 32 Ill. 2d 361, 205 N.E.2d 435 (1965); 
People ex rel. Wallace v. Labrenz
, 411 Ill. 618, 622, 104 N.E.2d 769, 772 (1952).

 Additionally, the trial court properly invoked jurisdiction under its equitable powers as a court of general jurisdiction.  The same avenue was taken by the trial court in 
In re Baby Boy Doe
.  
In re Baby Boy Doe
, 260 Ill. App. 3d 392, 397, 632 N.E.2d 326, 329 (1994), 
appeal denied
, No. 76560.  Pursuant to the Illinois Constitution, the circuit court has subject matter jurisdiction extending to all justiciable matters, with certain limited exceptions, as invoked by the filing of a complaint or petition.  Ill. Const. 1970, art. VI, §9; 
City of Chicago v. Chicago Board of Education
, 277 Ill. App. 3d 250, 261, 660 N.E.2d 74, 81 (1995).  We find that the circuit court had jurisdiction to hear this cause.       

Turning to the merits, on appeal, Darlene Brown challenges the propriety of the trial court's order appointing a temporary custodian to consent, on her behalf, to blood transfusions for the benefit of her viable fetus, Fetus Brown.  Darlene Brown contends that, under federal and Illinois law, as a competent adult, she has an absolute right to refuse medical advice and treatment.  In contrast, the State urges that its substantial interest in the viable fetus outweighs the minimal invasion presented by the blood transfusion.  The public guardian also appeals, seeking guidance regarding its role as protector of fetal rights, in light of prior Illinois decisions, including 
In re Baby Boy Doe
, 260 Ill. App. 3d 392, 632 N.E.2d 326 (1994)
.

The springboard for this case is the appellate decision in 
In re Baby Boy Doe
, 260 Ill. App. 3d 392, 632 N.E.2d 326 (1994).  In 
Baby Boy Doe
, the appellate court 
was asked to decide whether the circuit court should balance the rights of the unborn but viable fetus against the right of the competent woman to choose the type of medical care she deemed appropriate, based in part on personal religious considerations.  
Baby Boy Doe
, 260 Ill. App. 3d at 398, 632 N.E.2d at 330
.  

The 
Baby Boy Doe
 court first considered the opinion of the Illinois Supreme Court in 
Stallman v. Youngquist
, 125 Ill. 2d 267, 531 N.E.2d 355 (1988)
.  In 
Stallman
, the court determined that a tort cause of action may not be maintained by a fetus against its mother for the unintentional infliction of prenatal injuries.  
Stallman
, 125 Ill. 2d at 271, 531 N.E.2d at 356-57.  In so deciding, the 
Stallman
 court reasoned that "the law will not treat a fetus as an entity which is entirely separate from its mother."  
Stallman
, 125 Ill. 2d at 277, 531 N.E.2d at 359.  Moreover, the court stated that, in Illinois, a fetus cannot have rights superior to those of its mother.  
Stallman
, 125 Ill. 2d at 276, 531 N.E.2d at 359.  The court thus held that a pregnant woman owes no legally cognizable duty to her developing fetus.  
Stallman
, 125 Ill. 2d at 280, 531 N.E.2d at 361.  

Following the reasoning of 
Stallman
, the 
Baby Boy Doe
 court held that Illinois courts should not engage in a balancing of the maternal and fetal rights such that "a woman's competent choice in refusing medical treatment as invasive as a cesarean section during her pregnancy must be honored, even in circumstances where the choice may be harmful to her fetus."  
Baby Boy Doe
, 260 Ill. App. 3d at 398, 632 N.E.2d at 330
.  In reaching this decision, the 
Baby Boy Doe
 court applied the rationale of 
Stallman
 to determine:

"
[A] woman's right to refuse invasive medical treatment, derived from her rights to privacy, bodily integrity, and religious liberty, is not diminished during pregnancy.  The woman retains the same right to refuse invasive treatment, even of lifesaving or other beneficial nature, that she can exercise when she is not pregnant.  The potential impact upon the fetus is not legally relevant; to the contrary, the 
Stallman
 court explicitly rejected the view that the woman's rights can be subordinated to fetal rights."  
Baby Boy Doe
, 260

Ill. App. 3d at 401, 632 N.E.2d at 332
.

In 
dicta
, however, the 
Baby Boy Doe
 court left open the question of whether blood transfusions, involving "relatively noninvasive and risk-free" procedures, could permissibly be ordered in such a circumstance.  
Baby Boy Doe
, 260 Ill. App. 3d at 402, 632 N.E.2d at 333.

The stage being set, the issue presented in this case is somewhat different from that presented in 
Baby Boy Doe
.  In 
Baby Boy Doe
, both the State and the public guardian urged a balancing of the mother's rights against the putative rights of the viable fetus.  Based on 
Stallman
, the court in 
Baby Boy Doe
 refused to engage in such a balancing.  
Baby Boy Doe
, 260 Ill. App. 3d at 393, 632 N.E.2d at 326.  In this case, the State urges, not that we balance the mother's interests against those of the fetus, but rather the State's interests in the viable fetus as against the mother's expressed desire to forego a blood transfusion.

In contrast, Darlene Brown urges that she holds an absolute right to refuse medical treatment grounded in Illinois common and statutory law, and based on the Illinois and United States Constitutions.  Brown also argues that the 
Baby Boy Doe
 court's determination that blood transfusions are "minimally invasive" is not a valid legal basis for divining when a patient's right to refuse treatment will be followed.  Specifically, Brown argues that to qualify the patient's choice in refusing treatment undermines the patient's authority to make a competent treatment decision.

Illinois recognizes a common law right of competent adults to refuse medical treatment.  
In re E.G.
, 133 Ill. 2d 98, 106, 549 N.E.2d 322, 325 (1989).  The right to refuse such treatment is based on the doctrine of informed consent, which requires physicians to obtain consent before performing any medical surgery or procedure upon a patient.  
In re Estate of Longeway
, 133 Ill. 2d 33, 45, 549 N.E.2d 292, 297 (1989).  The right to refuse treatment anticipates all forms of medical treatment, including life-saving and life-sustaining procedures (
Longeway
, 133 Ill. 2d at 45, 549 N.E.2d at 297), and includes the refusal of blood transfusions.  
In re E.G.
, 133 Ill. 2d at 106, 549 N.E.2d at 325; 
In re Estate of Brooks
, 32 Ill. 2d 361, 365, 205 N.E.2d 435, 438 (1965).  But see 
People ex rel. Wallace v. Labrenz
, 411 Ill. 618, 620, 104 N.E.2d 769, 771 (1952) (State can require blood transfusion for eight-day-old infant over the religious objections of the infant's parents).     

The United States Supreme Court has stated that a person's interest in refusing medical treatment has constitutional underpinnings in the due process clause of the fourteenth amendment to the United States Constitution.  In 
Cruzan v. Director, Missouri Department of Health
, 497 U.S. 261, 279, 111 L. Ed. 2d 224, 242, 110 S. Ct. 2841, 2851-52 (1990), the United States Supreme Court explained that a patient has a liberty interest in refusing medical treatment which must be balanced in a given case against the relevant State interests.

The Illinois Supreme Court has declined to construe the right of privacy under the Illinois Constitution to include a right to refuse medical treatment.  
In re C.E.
, 161 Ill. 2d 200, 212-13, 641 N.E.2d 345, 351 (1994).  The supreme court, however, has indicated that religious-based objections to medical treatment find constitutional protection under the first amendment to the United States Constitution.   
In re E.G.
, 133 Ill. 2d at 106, 549 N.E.2d at 325; 
Estate of Brooks
, 32 Ill. 2d at 372, 205 N.E.2d at 441-42.

The right to refuse medical treatment, however, is not absolute.  
In re E.G.
, 133 Ill. 2d at 111, 549 N.E.2d at 328.  T
he State may intervene in a given case if the State's interests outweigh the interests of the patient in refusing medical treatment.  This is true whether the refusal is based on common law or constitutional principles.  
Cruzan
, 497 U.S. at 279, 111 L. Ed. 2d at 242, 110 S. Ct. at 2852;  
In re Estate of Longeway
, 133 Ill. 2d at 48, 549 N.E.2d at 299
.  Generally, courts consider four State interests--the preservation of life, the prevention of suicide, the protection of third parties, and the ethical integrity of the medical profession--when deciding whether to override competent treatment decisions.  
 
Application of the President & Directors of Georgetown College, Inc.
, 331 F.2d 1000, 1006-07 (D.C. Cir. 1964); 
Baby Boy Doe
, 260 Ill. App. 3d at 404, 632 N.E.2d at 334
; 
Superintendent of Belchertown State School v. Saikewicz
, 373 Mass. 728, 741, 370 N.E.2d 417, 425 (1977).  See also 
Compassion in Dying v. State of Washington
, 79 F.3d 790, 816 (9th Cir. 1996) (finding six state interests, cited with approval on writ of 
certiorari
, 
Washington v. Glucksberg
, 521 U.S. ___, ___, 138 L. Ed. 2d 772, 792-93 n.21, 117 S. Ct. 2258, 2271-72 n.21 (1997)).  

In this case, the circuit court considered the four state interests set forth above 
and determined:  (1) the transfusion was necessary to preserve the life of Darlene and the fetus; (2) the prevention of suicide was not at issue because Darlene had clearly stated her desire to accept medical treatment, other than a blood transfusion; (3) the State's interest in protecting third parties was strong because Darlene has two minor children, ages three and eight, who would be orphaned if she did not receive the transfusion; and (4) the transfusion procedure would be minimally invasive and could "be administered without additional pain or intrusion because Darlene already [had] two intravenous sites." 

We agree with the circuit court that prevention of suicide is not at issue.  Darlene Brown consented to and sought all possible medical treatment except blood transfusions.  Likewise, the State's interest in maintaining the ethical integrity of the medical profession is not dispositive.  This interest seeks to protect the role of hospitals in fully caring for their patients as well as to promote the prevailing medical ethical standards.  
Superintendent of Belchertown
, 373 Mass. at 743-44, 370 N.E.2d at 426.  Although some hospitals have sought judicial determination of their role in these matters (see 
In re Dubreuil
, 629 So. 2d 819 (Fla. 1994)), the American Medical Asssocation Board of Trustees generally recommends that "[j]udicial intervention is inappropriate when a woman has made an informed refusal of a medical treatment designed to benefit her fetus."  H.  Cole, 
Legal Interventions During Pregnancy
, 264 JAMA 2603, 2670 (1990).  Accordingly, this interest does not provide a definitive solution. 

The next factor is the State's interest in preservation of life.  The circuit court found that the State had an interest in preserving both the life of the mother and the fetus.  Typically, however, this factor concerns only preservation of the life of the decision maker.  
Baby Boy Doe
, 260 Ill. App. 3d at 404, 632 N.E.2d at 334.  As one court noted: 

"[T]he State's concern is weakened when the decision maker (the individual who refuses to consent to the treatment) is also the patient `because the life that the state is seeking to protect in such a situation is the life of the same person who has competently decided to forgo the medical intervention; it is not some other actual or potential life that cannot adequately protect itself.́"  
Norwood Hospital v. Munoz
, 409 Mass. 116, 125-26, 564 N.E.2d 1017, 1023 (1991), citing 
Matter of Conroy
, 98 N.J. 321, 349, 486 A.2d 1209,

1223 (1985).

Most cases concern competent adults who are not pregnant.  Of the cases concerning a pregnant woman, most concern the woman's refusal of medical treatment 
after
 the birth of the child, and, thus, the woman's wishes are respected.  
Stamford Hospital v. Vega
, 236 Conn. 646, 674 A.2d 821 (1996); 
Fosmire v. Nicoleau
, 75 N.Y.2d 218, 225, 551 N.E.2d 77, 80, 551 N.Y.S.2d 876, 879 (1990).  Although 
Baby Boy Doe
 was a pregnancy case, the court found the preservation-of-life factor irrelevant as the cesarean section procedure, although necessary for the health of the fetus, was not necessary to preserve the mother's life or health.  In fact, the court found that the procedure posed a greater risk to the mother's health.  
Baby Boy Doe
, 260 Ill. App. 3d at 404, 632 N.E.2d at 334.  Only in the instant case are we confronted with a situation in which both the pregnant mother and the viable fetus were to benefit from the proposed blood transfusions.  We determine that the State's interest in preservation of life continues to concern the life of the decision maker.  

Illinois public policy values the sanctity of life.  
In re E.G.
, 133 Ill. 2d at 110, 549 N.E.2d at 327.  Along with the State's interest in preservation of life, however, must be considered the State's interest in protecting the autonomy of the individual.  "[T]he State rarely acts to protect individuals from themselves ***.  This is consistent with the primary function of the State to preserve and promote liberty and the personal autonomy of the individual."  
Fosmire v. Nicoleau
, 75 N.Y.2d 218, 227, 551 N.E.2d 77, 81-82, 551 N.Y.S.2d 876, 880-81 (1990).  

Illinois statutorily recognizes a competent adult's decision to refuse medical treatment.  The Health Care Surrogate Act provides that the "legislature recognizes that all persons have a fundamental right to make decisions relating to their own medical treatment, including the right to forgo life-sustaining treatment."  755 ILCS 40/5 (West 1996).  The intent of the Act is:

"[T]o define the circumstances under which private decisions by patients with decisional capacity and by surrogate decision makers on behalf of patients lacking decisional capacity 
to
 
make
 
medical
 
treatment
 
decisions
 
or
 to terminate life-sustaining treatment may be made without judicial involvement of any kind."  (Emphasis indicates change in statute.)  755 ILCS 40/5 (West 1996) (as amended 

by Pub. Act 90-246, §5, eff. January 1, 1998).

Section 20 of the Act provides that "[d]ecisions whether to forgo life-sustaining or any other form of medical treatment involving an adult patient with decisional capacity may be made by that adult patient."  755 ILCS 40/20(a) (West 1996).  Construing the State's interest in preserving life in conjunction with its interest in protecting the autonomy of the individual, we find that the State's interest in preserving Darlene Brown's life is not determinative in this case.

Thus, the final State interest is the impact upon third parties.  Most cases have considered this interest in the context of the impact upon the minor children of a woman refusing medical treatment.  
Application of the President & Directors of Georgetown College, Inc.
, 331 F.2d 1000, 1006-07 (D.C. Cir. 1964).  But see 
In re E.G.
, 133 Ill. 2d at 111-12, 549 N.E.2d at 328 (noting the impact of a mature minor's decision to refuse a blood transfusion upon parents, guardians, adult siblings, and other relatives). 

Some courts have found that the state's interest in the welfare of third parties cannot be determinative of the patient's right to refuse medical treatment.  
Fosmire v. Nicoleau
, 75 N.Y.2d 218, 230, 551 N.E.2d 77, 83-84, 551 N.Y.S.2d 876, 882-83 (1990).  Other courts have declined to go so far, instead holding that where there is no evidence of the minor children's abandonment, such an interest will not override the patient's competent refusal.  
Norwood Hospital
, 409 Mass. at 129, 564 N.E.2d at 1024.  

Here, the record does not indicate evidence of abandonment of the minor children.  Lester Brown, the natural father of the three-year-old, supported Darlene's decision to refuse consent.  While there is no evidence in the record regarding the eight-year-old's natural father, Lester Brown as well as his and Darlene's parents all were willing to help support both minor children.  Thus, the State's interest in protecting the living minor children is not determinative.

We therefore encounter the ultimate issue, the State's interest in protecting the viable fetus.  In 
Roe v. Wade
, the United States Supreme Court explained that the state maintains an "important and legitimate interest in preserving and protecting the health of the pregnant woman *** [and] the potentiality of human life."  
Roe v. Wade
, 410 U.S. 113, 162, 35 L. Ed. 2d 147, 182, 93 S. Ct. 705, 731 (1973).  In fact, the State maintains "a substantial interest in potential life throughout pregnancy."  
Planned Parenthood of Southeastern Pa. v. Casey
, 505 U.S. 833, 876, 120 L. Ed. 2d 674, 714, 112 S. Ct. 2791, 2820 (1992).  In the abortion context, the state's important and legitimate interest becomes compelling at viability.  At that point, the state may restrict abortion, except when necessary to preserve the life or health of the mother.  
Roe
, 410 U.S. at 163-64, 35 L. Ed. 2d at 182-83, 93 S. Ct. at 732.  

In Illinois, the Illinois Constitution and Illinois Supreme Court have both been silent regarding the State's interest in a viable fetus.  Under the Illinois Abortion Law of 1975:

"Without in any way restricting the right of privacy of a woman or the right of a woman to an abortion under [the decisions of the United States Supreme Court of January 22, 1973], *** [an] unborn child is a human being from the time of conception and is, therefore, a legal person for purposes of the unborn child's right to life and is entitled to the right to life from conception under the laws and Constitution of this State."  720 ILCS 510/1

(West 1996).

The Act defines viability as "that stage of fetal development when, in the medical judgment of the attending physician based on the particular facts of the case before him, there is a reasonable likelihood of sustained survival of the fetus outside the womb, with or without artificial support."  720 ILCS 510/2(1) (West 1996).  

To date, a fetus is not considered a minor for purposes of the Illinois Juvenile Court Act.  See 
Baby Boy Doe
, 260 Ill. App. 3d at 398, 632 N.E.2d at 330.  Illinois courts have, however, found viable fetuses to be persons with regard to wrongs caused by third parties, but they have distinguished such injuries from those caused by the mother.  See 
Cullotta v. Cullotta
, 287 Ill. App. 3d 967, 969-70, 678 N.E.2d 717, 718 (1997).

In examining the State's interest in the viable fetus, we note the distinct circumstances of this case.  This is not an abortion case in which a pregnant woman seeks to terminate an unwanted pregnancy.  Likewise, this case does not involve substance abuse or other abuse by a pregnant woman.  And while refusal to consent to a blood transfusion for an infant would constitute neglect (see 
Labrenz
, 411 Ill. at 624, 104 N.E.2d at 773), without a determination by the Illinois legislature that a fetus is a minor for purposes of the Juvenile Court Act, we cannot separate the mother's valid treatment refusal from the potential adverse consequences to the viable fetus.

Consequently, following the lead of 
Baby Boy Doe
 and 
Stallman
, and in this case balancing the mother's right to refuse medical treatment against the State's substantial interest in the viable fetus, we hold that the State may not override a pregnant woman's competent treatment decision, including refusal of recommended invasive medical procedures, to potentially save the life of the viable fetus.  We disagree with the 
Baby Boy Doe
 court's suggestion that a blood transfusion constitutes a "relatively noninvasive and risk-free procedure" (
Baby Boy Doe
, 260 Ill. App. 3d at 402, 632 N.E. 2d at 333), and find that a blood transfusion is an invasive medical procedure that interrupts a competent adult's bodily integrity.  We thus determine that the circuit court erred in ordering Brown to undergo the transfusion on behalf of the viable fetus.

In reaching this difficult conclusion, we note the mother's apparent disparate ethical and legal obligations.  Under the law of this State, however, we cannot impose a legal obligation upon a pregnant woman to consent to an invasive medical procedure for the benefit of her viable fetus.  As noted by the United States Supreme Court in 
Planned Parenthood v. Casey
:

"[T]he liberty of the woman is at stake in a sense unique to the human condition and so unique to the law.  The mother who carries a child to full term is subject to anxieties, to physical constraints, to pain that only she must bear.  That these sacrifices have from the beginning of the human race been endured by woman with a pride that ennobles her in the eyes of others and gives to the infant a bond of love cannot alone be grounds for the State to insist she make the sacrifice.  Her suffering is too intimate and personal for the State to insist, without more, upon its own vision of the woman's role, however dominant that vision has been in the course of our history and our culture.  The destiny of the woman must be shaped to a large extent on her own conception of her spiritual imperatives and her place in society."  
Casey
, 505 U.S. at 852, 120 L. Ed. 2d at 698-99,

112 S. Ct. at 2807.

    From a practical standpoint, this court questions the enforcement of such court orders, even assuming their validity.  The court in 
Baby Boy Doe
 noted the practical difficulties of enforcing such orders.  
Baby Boy Doe
, 260 Ill. App. 3d at 405-06, 632 N.E.2d at 335.  Such an order would be in the nature of an injunction, issued by the court and requiring the mother to consent.  
In re Minor
, 127 Ill. 2d 247, 261, 537 N.E.2d 292, 298 (1989).  The only enforcement of such injunctive orders is a contempt citation issued against the mother for willfully violating an order of the court.  
Fidelity Financial Services, Inc. v. Hicks
, 267 Ill. App. 3d 887, 890, 642 N.E.2d 759, 761 (1994).  "Contempt is punishable by the imposition of a fine, imprisonment, or other sanction."  
Fidelity Financial
, 267 Ill. App. 3d at 890, 642 N.E.2d at 761.  We question the efficacy of a court order requiring a blood transfusion for someone who is facing death.  

As a final matter, the public guardian's appeal argues that, in light of 
In re Baby Boy Doe
, the circuit court erred in appointing a guardian 
ad
 
litem
 to represent the alleged interests of the viable fetus in opposition to the express wishes of its mother.  Invoking the provision in the Illinois Abortion Law of 1975 stating that an unborn child is a human being from the time of conception and a legal person, the circuit court determined that it had authority to appoint a guardian 
ad
 
litem
 for Fetus Brown.  720 ILCS 510/1 (West 1996).

Although the public guardian is correct that 
Baby Boy Doe
 held that the mother's rights and the fetus' rights may not be balanced, this case did not involve such a balancing.  Instead, the issue as framed in this case involved the mother's right to refuse medical treatment as considered against the State's interest in the viable fetus.  The asserted legal interests did not require the public guardian's representation of the separate, putative interests of the viable fetus.  Thus, the circuit court erred in appointing the public guardian to represent the interests of the viable fetus in this case. 

In conclusion, the circuit court erred in appointing a temporary custodian for Fetus Brown with the authority to consent to blood transfusions for Darlene Brown and erred in appointing the public guardian as guardian 
ad
 
litem
 for Fetus Brown.

Reversed.

GREIMAN and ZWICK, JJ., concur.