THOMPSON, J.
INTRODUCTION
Jennifer Wixtrom appeals an order denying her petition to be appointed guardian of the fetus of J.D.S., an incapacitated female.[1] We conclude that the- trial court correctly denied the petition and affirm.
*536 FACTS AND PROCEDURAL HISTORY
On 6 May 2003, pursuant to section 415.1051(2), Florida Statutes, the Department of Children and Family Services (“Department”) filed a petition seeking an order authorizing emergency adult protective services for J.D.S. In its petition, the Department alleged that J.D.S. was in need of temporary emergency protective services because it had received a report that J.D.S. was pregnant as a result of a sexual battery, which occurred while she was residing in a group home. The petition stated that J.D.S. was a 22-year old woman suffering from severe mental retardation, cerebral palsy, autism, and seizure disorder and that she was unable to adequately provide for her own care and protection. The petition also stated that J.D.S. was nonverbal, unable to make decisions, and unable to comprehend her own mental, physical, or environmental limitations. The petition alleged that J.D.S. was taking numerous medications, which could be detrimental to the fetus. The petition requested appointment of a guardian for J.D.S. and protective supervision for J.D.S. On 13 May 2003, the Department filed an amended petition seeking appointment of a guardian for J.D.S. and a separate guardian for the fetus. The Department alleged that J.D.S.’s interests and needs were potentially adverse to those of the fetus. The Department stated that J.D.S.’s guardian was required to avoid conflicts of interest, but that a conflict of interest was likely because J.D.S.’s medications could be detrimental to the fetus.
On 14 May 2003, the trial court ordered protective services for J.D.S. because she was a vulnerable adult who had been abused. On the same day, Emelia Belford, a professional guardian, instituted a separate proceeding under Chapter 744, which governs guardianships. Belford petitioned the court to determine whether J.D.S. was incapacitated and petitioned to be appointed plenary guardian of J.D.S. Responding to Belford’s petition, the trial court appointed an attorney for J.D.S. and appointed a committee to determine if J.D.S. was incapacitated. Belford also filed a petition to be appointed emergency temporary guardian for J.D.S., but the court denied Belford’s petition stating that J.D.S. was not then in danger.
Upon entry of the order denying Bel-ford’s petition to be appointed temporary guardian of J.D.S., Jennifer Wixtrom filed a petition to be appointed guardian of J.D.S.’s fetus. Wixtrom alleged that the appointment was essential because J.D.S. lacked the mental capacity to provide proper prenatal care and to make necessary decisions for the protection and enhancement of the fetus during its formative months. Citing In re T.W., 551 So.2d 1186, 1190 (Fla.1989), the trial court ruled that it is error to appoint a guardian ad litem for a fetus. The trial court also cited several cases[2] which held that a fetus is not a “person” within the meaning of certain statutes. Furthermore, the court noted that Chapter 744, Florida Statutes, does not provide for the appointment of a guardian for a fetus. Finally, the court denied the petition because Wixtrom ne *537 glected to provide her home address on her guardianship application and because she did not certify notice to all parties.
On 2 June 2003, Wixtrom filed a motion for rehearing with a corrected certificate of service. On the same day, the trial court heard testimony regarding J.D.S.’s capacity. The trial court found that J.D.S. was totally incapacitated[3] and ordered the appointment of a plenary guardian for J.D.S. The trial court denied a motion to intervene filed by the Department and the Attorney General.[4] After Wixtrom’s motion for rehearing was denied, Wixtrom filed a notice of appeal. Thereafter, the trial court entered an order stating that J.D.S.’s guardian had created a plan for J.D.S. which stated that an abortion would not be performed on J.D.S.
JURISDICTION
In her petition seeking appointment as guardian, Wixtrom alleged that J.D.S.’s guardian owed a fiduciary duty to J.D.S. and that in fulfilling that duty, the guardian might elect to have the fetus aborted or fail to consider that several medications being taken by J.D.S. would have an adverse effect on the fetus. After oral argument, this court was informed that J.D.S. delivered a child.[5] We have elected to decide this case on the merits, notwithstanding its mootness, because we consider this issue to be of great public importance and capable of recurring. Enterprise Leasing Co. v. Jones, 789 So.2d 964 (Fla.2001); In re T.W.; Holly v. Auld, 450 So.2d 217 (Fla.1984); In re Fey, 624 So.2d 770 (Fla. 4th DCA 1993).
STANDARD OF REVIEW
The issue before this court is whether the trial court had the authority to appoint a fetal guardian pursuant to Florida’s guardianship statutes. Because this case involves the application of statutory law, and is a pure question of law, the standard of review is de novo. Walter v. Walter, 464 So.2d 538, 539-540 (Fla.1985); First Union Nat’l Bank v. Turney, 839 So.2d 774 (Fla. 1st DCA 2003); Dixon v. City of Jacksonville, 774 So.2d 763, 765 (Fla. 1st DCA 2000).
*538 ANALYSIS
On its face, Chapter 744, which governs guardianships, does not provide for the appointment of a guardian for a fetus. Section 744.102, the definitions section of Chapter 744, defines the terms, “guardian,”[6] “ward,”[7] and other terms used within the chapter, but it does not define or use the term, “fetus.” Furthermore, the term, “fetus” is not used in Chapter 744, and no section of Chapter 744 entitles a fetus or unborn child to a guardian. “[W]hen the language of the statute is clear and unambiguous and conveys a clear and definite meaning, there is no occasion for resorting to the rules of statutory interpretation and construction; the statute must be given its plain and obvious meaning.” Holly, 450 So.2d at 219 (Fla.1984) (quoting A.R. Douglass, Inc. v. McRainey, 102 Fla. 1141, 137 So. 157, 159 (1931)). We conclude that the absence of a provision for fetuses means that the protection of the statute does not extend to fetuses. Compare State v. Gonzalez, 467 So.2d 723, 726 (Fla. 3d DCA 1985) (stating that the Florida legislature is capable of distinguishing between an unborn child and a person born alive since it has enacted legislation acknowledging the distinction). The legislature has, in other contexts, explicitly provided protection for fetuses. See, e.g., § 782.071, Fla. Stat. (“ ‘vehicular homicide’ is the killing of a human being, or the killing of a viable fetus” by operation of a motor vehicle); § 782.09, Fla. Stat. (willful killing of an unborn child by injury to mother shall be deemed manslaughter). Had the legislature decided that a fetus was entitled to the protection of the guardianship statutes, it would have so legislated. See Davis v. Simpson, 313 So.2d 796 (Fla. 1st DCA 1975) (holding that “person” under wrongful death statute does not include full-term, viable, but stillborn fetus and stating that changing the statute to include an unborn fetus would require legislative action rather than judicial legislation). Finding no mention of the term, “fetus” in Chapter 744 and no Florida case interpreting the chapter to include fetuses, we conclude that the provisions of Chapter 744 do not apply to a fetus.
Furthermore, section 744.102(8), Florida Statutes, defines a “guardian” as “a person who has been appointed by the court to act on behalf of a ward’s person or property or both.” A “ ‘ward’ means a person for whom a guardian has been appointed.” § 744.102(19), Fla. Stat. (emphasis added). It follows that a fetus must be considered a “person” to be appointed a guardian. We find no Florida statute or case law that has determined a fetus to be a person. Rather, the opposite is true. For instance, the Florida Supreme Court declined to rule that a fetus is a “person” within the meaning of the Florida Wrongful Death Act,[8] Young v. St. Vincent’s Medical Center, Inc., 673 So.2d 482, 483 (Fla.1996), and the Fourth District declined to apply a child abuse statute[9] in a case involving a fetus, State v. Gethers, 585 So.2d 1140 (Fla. 4th DCA 1991). See also Roe v. Wade, 410 U.S. 113, 158, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973) (“the word ‘person,’ as used in the Fourteenth Amendment, does not include the unborn”). Also persuasive are holdings from other jurisdictions which have concluded that a fetus is not a “person” and not subject to guardianship. See Matter of D.K., 204 N.J.Super. 205, 497 A.2d 1298, 1302 (Ch. Div.1985) (holding that appointment of guardian for a fetus *539 prior to viability was improper and pointing out that there is no reference to fetuses in guardianship rules and that the use of the term “person” in the rules was significant because a fetus is not a person); see also Roe v. Casey, 464 F.Supp. 483, 487 (D.C.Pa.1978) (“[W]e hold that unborn children (fetuses, embryos) are not persons with a legally protectable interest within the meaning of [Federal Rules of Civil Procedure] and, thus, appointment of guardian [a]d litem is neither warranted nor required”); In re Fetus Brown, 294 Ill.App.3d 159, 228 Ill.Dec. 525, 689 N.E.2d 397 (1997) (holding trial court erred in appointing guardian for fetus in case involving mother’s right to refuse medical treatment versus state’s interest in the viable fetus). But see 66 Federal Credit Union v. Tucker, 853 So.2d 104 (Miss.2003) (holding that a fetus which had “quickened” was a person for purpose of prosecuting a wrongful death action).
Wixtrom is concerned that J.D.S.’s guardian could have authorized an abortion of the fetus. Florida law provides safeguards to insure that a guardian does not act capriciously or cavalierly when considering the health of the incapacitated mother and fetus. For example, sections 390.0111(1) and (3), Florida Statutes, state that no abortion can be performed on a ward unless two physicians certify in writing that “to a reasonable degree of medical probability, the termination of pregnancy is necessary to save the life or preserve the health of the pregnant woman,” and the guardian must also consent to the medical procedure. Further, before the guardian can consent to an abortion, the guardian must receive specific authority from the court.[10] And, before the court can grant that extraordinary authority, it must appoint an attorney to represent the ward, receive independent evidence from experts, and find by clear and convincing evidence that the incapacitated person cannot make the decision and that the requested extraordinary authority is in the best interest of the incapacitated person.[11] The court may also appoint a court monitor to conduct an investigation, collect evidence, and report its findings to the court.[12]

CONCLUSION

Having concluded that Chapter 744 does not provide for the appointment of a guardian for a fetus, explicitly or implicitly, we find that the trial court correctly denied Wixtrom’s petition to be appointed guardian of J.D.S.’s fetus.
AFFIRMED.
ORFINGER, J, concurs and concurs specially, with opinion.
PLEUS, J., dissents with opinion.

. The State of Florida and the Department of Children and Family Services filed a joint amicus brief in support of Wixtrom. Right To Life, Inc., also filed an amicus brief in support of Wixtrom. The Center for Persons with Disabilities, the American Association of *536 Disabled People, the American Civil Liberties Union, the American Civil Liberties Union of Florida, the Florida National Organization for Women, Inc., and the Center for Reproductive Rights filed amicus briefs in opposition to Wixtrom.

. In re T.W., 551 So.2d 1186, 1190 (Fla.1989); Hernandez v. Garwood, 390 So.2d 357, 358 (Fla.1980); Duncan v. Flynn, 358 So.2d 178, 178 (Fla. 1978); Stern v. Miller, 348 So.2d 303, 308 (Fla. 1977); Love v. State, 450 So.2d 1191, 1193 (Fla. 4th DCA 1984); and Styles v. Y.D. Taxi Corp., Inc., 426 So.2d 1144, 1145 (Fla. 3d DCA 1983).

.The trial court found:
1) The nature and scope of the Ward’s inca-pacities are: severe mental retardation, cerebral palsy with a history of autism.
2) The following facts demonstrate that the Ward is totally without capacity to care for the Ward's person or property: The ward may respond to verbal or visual stimuli or follow commands. She is unable to communicate and unable to make her needs known. She requires assistance with ambulation and requires total assistance with all activities of daily living. She cannot hold a pen, cannot write, doesn’t know her name or very basic information. She is unable to follow simple commands [sic] and is unable to express basic needs. Her intellectual deficit and inability to make her needs known significantly impairs her ability to make informed decisions in all areas of her life.
3) The Ward lacks total capacity to make informed decisions about care and treatment or to meet the essential requirements for the Ward’s physical or mental health or safety; is subject to total legal disability; is incapable of exercising any rights; and a guardian must exercise all delegable rights of the Ward and have full powers and duties with respect to the Ward and the Ward’s person and property....

. The Department and the Attorney General did not appeal the trial court's order denying intervention, thereby waiving the right to contest the court’s ruling on intervention.

. The attorney representing J.D.S. filed a Suggestion of Birth with this court on 12 September 2003:
1. That on Saturday, August 30, 2003 at 10:00 o’clock a.m. in Orange County, Florida, J.D.S. gave birth by cesarean section to a baby girl known as Baby S.
2. Baby S weighed 6 pounds, 7 ounces and her length was 21íá inches.

. § 744.102(8), Fla. Stat. (2003).

. § 744.102(19), Fla. Stat. (2003).

. § 768.19, Fla. Stat. (1993).

. § 827.04(1), Fla. Stat. (1987).

. § 744.3215(4)(e), Fla. Stat. (2003).

. § 744.3725, Fla. Stat. (2003).

. § 744.107, Fla. Stat. (2003).