(No. 64957.—

LINDSAY STALLMAN, Appellee, v. CLARENCE
YOUNGQUIST *et al.* (Bari Stallman, Appellant).

*Opinion filed November 21, 1988.*

STAMOS, J., took no part.

Williams & Montgomery, Ltd., of Chicago (Barry L.
Kroll, Timothy V. Hoffman, John D. Daniels, Lloyd E.
Williams, Jr., and Mark A. Miller, of counsel), for appel-
lant.

George B. Collins and Christopher Bargione, of Collins & Bertelle, of Chicago, for appellee.

Shaun McParland, of Tressler, Soderstrom, Maloney & Priess, of Chicago, for *amicus curiae* Illinois Association of Defense Trial Counsel.

JUSTICE CUNNINGHAM delivered the opinion of the court:

Plaintiff, Lindsay Stallman, brought suit by her father and next friend, Mark Stallman, against defendant Bari Stallman and codefendant Clarence Youngquist (not a party to this appeal) for prenatal injuries allegedly sustained by plaintiff during an automobile collision between Bari Stallman's automobile and the automobile driven by Clarence Youngquist. Defendant Bari Stallman is the mother of plaintiff. Defendant was approximately five months pregnant with plaintiff and was on her way to a restaurant when the collision occurred.

This case has been before the circuit court of Cook County twice, and also twice before the appellate court, in *Stallman I* (129 Ill. App. 3d 859) and *Stallman II* (152 Ill. App. 3d 683). The *Stallman II* court reversed the circuit court, which had granted defendant's motion for summary judgment. Defendant filed a petition for leave to appeal from the decision in *Stallman II* pursuant to Supreme Court Rule 315 (107 Ill. 2d R. 315), which was granted. There are two issues on appeal: the status of the parental immunity doctrine in Illinois and the tort liability of mothers to their children for the unintentional infliction of prenatal injuries. For the reasons developed below, this court does not recognize a cause of action brought by or on behalf of a fetus, subsequently born alive, against its mother for the unintentional infliction of prenatal injuries. This decision requires us to hold that the circuit court was correct when it granted

defendant's motion for summary judgment. Therefore, it is unnecessary for this court to reach the issue concerning the status of the parental immunity doctrine.

## CASE BACKGROUND

Plaintiff brought a three-count complaint in the circuit court of Cook County. Counts I and III are not involved in this appeal and are presently pending in the circuit court. Count II of plaintiff's second amended complaint, the subject matter of this appeal, charged defendant with negligence, the direct and proximate result of which caused the fetus (the unborn plaintiff) to be thrown about in the womb of her mother (defendant) resulting in serious and permanent injury to plaintiff.

Defendant's motion to dismiss was granted in the circuit court. Plaintiff appealed this decision to the appellate court in *Stallman I*. Defendant argued to the *Stallman I* court that no Illinois court had ever considered the question whether a mother could, on any grounds, be sued by her subsequently born child for injuries sustained as a result of the mother's acts or omissions during pregnancy. In response to defendant's argument that public policy considerations militate against imposing civil liability through the tort damages system on women who become mothers, the *Stallman I* court expressed that in its "opinion, the right of the child to be compensated for her injuries is not outweighed by considerations of public policy." (129 Ill. App. 3d at 865.) The *Stallman I* court then stated that it did "agree with plaintiff *** that the parent-child tort immunity doctrine should not be applied to this case so as to defeat plaintiff's cause of action for negligence against her mother" (129 Ill. App. 3d at 862), and that "[i]n our opinion, plaintiff should be given the opportunity to prove whether defendant Stallman's act of driving to a restaurant was not an act arising out of the fam-

ily relationship and directly connected with family purposes and objectives" (129 Ill. App. 3d at 864).

On remand, the circuit court granted the defendant's motion for summary judgment. Plaintiff appealed this decision to the appellate court. Defendant argued that *stare decisis* and the doctrine of the law of the case precluded the *Stallman II* court from reconsidering the issue of parental immunity, which was decided by the *Stallman I* court. The *Stallman II* court rejected defendant's argument and proceeded to reevaluate and then partially abrogate the parental immunity doctrine.

The *Stallman II* court noted that in Illinois an infant who is born alive and survives may bring a tort action to recover damages for prenatal injuries resulting from another's negligence. The court then simply stated that its holding "simply allows plaintiff to litigate count II of her complaint, naming her mother as a defendant." (152 Ill. App. 3d at 694.) The *Stallman II* court cited a Michigan court of appeals case which held, "a child's mother bears the same liability for negligent conduct, resulting in prenatal injuries, as would a third person. *Grodin v. Grodin* (1981), 102 Mich. App. 396, 301 N.W.2d 869." 152 Ill. App. 3d at 694.

The *Stallman II* court reversed the order of the circuit court granting the summary judgment and remanded the cause to permit the parties to proceed to trial on the merits. Defendant petitioned for leave to appeal to this court pursuant to Supreme Court Rule 315 (107 Ill. 2d R. 315). We granted this appeal. Neither the *Stallman I* court nor the *Stallman II* court adequately addressed the preliminary issue whether a cause of action by or on behalf of a fetus, subsequently born alive, may be asserted against its mother for the unintentional infliction of prenatal injuries. This court holds that such a cause of action shall not be recognized.

This holding makes unnecessary the consideration of the issue of the parental immunity doctrine. Accordingly, we do not consider defendant's arguments concerning *stare decisis* and the doctrine of the law of the case, both of which were directed to the *Stallman II* court's decision on the parental immunity doctrine. Insofar as *Stallman I* and *Stallman II* purport to effect a change in the status of the parental immunity doctrine as it existed before the appeal to the *Stallman I* court, the judgments are vacated.

## PRENATAL NEGLIGENCE

The issue whether a cause of action exists by or on behalf of a fetus, subsequently born alive, against its mother for the unintentional infliction of prenatal injuries is an issue of first impression in this court. We begin with a review of the area of tort liability for prenatal negligence as it has developed in regards to third persons.

It was not until 1884, in *Dietrich v. Northampton* (1884), 138 Mass. 14, that such a case came before a court in the United States alleging a cause of action for prenatal injuries. In *Dietrich*, Judge Oliver Wendell Holmes held that the common law did not recognize a cause of action in tort for prenatal injuries to a fetus. Judge Holmes denied that such an action may lie primarily because the fetus "was a part of the mother at the time of the injury, [and] any damage to it which was not too remote to be recovered for at all was recoverable by her." (138 Mass. at 17.) After *Dietrich* and until 1946, all courts in the United States which considered the question agreed: no action would lie for injuries sustained by a fetus which became apparent on its birth.

This court was one of the first to consider the question of the liability of third persons for prenatal negligence after the *Dietrich* case. In *Allaire v. St. Luke's Hospital* (1900), 184 Ill. 359, it was held that no action would lie

for injuries to a fetus, only days away from birth, due to the negligence of the defendant hospital where the mother of the plaintiff was a patient awaiting the delivery of the plaintiff. In *Allaire*, this court affirmed the opinion of the appellate court, which had stated, " 'That a child before birth is, in fact, a part of the mother and is only severed from her at birth, cannot, we think, be successfully disputed.' " (184 Ill. at 368.) This court adopted the reasoning of the appellate court that the plaintiff, at the time of the injury, did not have a distinct and independent existence from his mother; the injury was to the mother and not to the plaintiff. 184 Ill. at 365.

*Allaire* is primarily remembered today for the dissent of Mr. Justice Boggs, who asked the question:

> "Should compensation for his injuries be denied on a mere theory, known to be false, that the injury was not to his [or her] person but to the person of the mother?" 184 Ill. at 374 (Boggs, J., dissenting).

The rule recognizing the right to bring an action for injuries inflicted on a fetus by a person not its mother is as pervasive and established now as was the contrary rule before 1946. This court overruled *Allaire* in *Amann v. Faidy* (1953), 415 Ill. 422, and recognized a cause of action under the wrongful death statute for the death of an infant who, while in a viable condition, sustained a prenatal injury due to the negligence of a third person. Later, in *Rodriguez v. Patti* (1953), 415 Ill. 496, this court recognized a common law right of action for personal injuries to an infant, a viable fetus, when wrongfully injured due to the negligence of third persons. Much later, in *Chrisafogeorgis v. Brandenberg* (1973), 55 Ill. 2d 368, this court held that a wrongful death action could be maintained on behalf of a stillborn child who sustained injuries due to the negligence of third persons while a viable fetus.

The early reliance by courts on viability as a point at which with certainty it could be said that the fetus and the woman who is the mother of the fetus are two separate entities proved to be troublesome. Most courts have since abandoned viability as a requirement for a child to bring an action for prenatal injuries inflicted by third persons. (See 40 A.L.R.3d 1222 (1971).) In *Sana v. Brown* (1962), 35 Ill. App. 2d 425, and *Daley v. Meier* (1961), 33 Ill. App. 2d 218, our appellate court considered whether a surviving infant had a right of action for injuries sustained while in its mother's womb during a previable state of development and answered in the affirmative.

In *Renslow v. Mennonite Hospital* (1977), 67 Ill. 2d 348, this court rejected viability as a requirement in a cause of action for prenatal injuries suffered by a fetus due to the negligence of third persons. According to the plurality, *Renslow* involved the issue of whether "a child, not conceived at the time negligent acts were committed against its mother, [has] a cause of action against the tortfeasors for its injuries resulting from their conduct." (67 Ill. 2d at 349.) The plaintiff in *Renslow* was born jaundiced and suffering from hyperbilirubinemia and required an immediate, complete exchange transfusion of her blood, as well as another such transfusion shortly thereafter. The plaintiff also allegedly suffered permanent damage to various organs, her brain, and her nervous system. This had occurred because eight years before the plaintiff's birth, the defendants (a hospital and a doctor) on two occasions transfused the plaintiff's mother with Rh-positive blood. The plaintiff's mother had Rh-negative blood, which was incompatible with and was therefore sensitized by the Rh-positive blood.

The appellate court, "in a careful and well-reasoned opinion, emphasized that the defendants were a doctor and a hospital, and held that there was no showing 'that the defendants could not reasonably have foreseen that

the teenage girl would later marry and bear a child and that the child would be injured as the result of the improper blood transfusion.' (40 Ill. App. 3d 234, 239.)" *Renslow*, 67 Ill. 2d at 350.

The above case law has grown out of circumstances in which the defendant was a third person and not the mother of the plaintiff. Plaintiff in the instant case asserts that she should be able to bring a cause of action for prenatal injuries against her mother just as she would be able to bring a cause of action for prenatal injuries against a third person. The *Stallman II* court noted that the Michigan court of appeals, in *Grodin v. Grodin* (1980), 102 Mich. App. 396, 301 N.W.2d 869, held that a child's mother bears the same liability for negligent conduct which results in prenatal injury as would a third person. (102 Mich. App. at 400, 301 N.W.2d at 870.) In *Grodin*, a child brought suit against his mother for prenatal negligence. The plaintiff in *Grodin* had developed brown and discolored teeth because the defendant mother had taken tetracycline during the time when she was pregnant with the plaintiff. The suit alleged failure on the part of the mother to request from a doctor a pregnancy test, failure to seek proper prenatal care, and failure to report to a doctor that the mother was taking tetracycline.

The *Grodin* court failed to understand that the question of the application of Michigan's partial abrogation of the parental immunity doctrine was a separate question from that of recognizing a cause of action by a fetus, subsequently born alive, against its mother for the unintentional infliction of prenatal injuries. The *Grodin* court would have the law treat a pregnant woman as a stranger to her developing fetus for purposes of tort liability. The *Grodin* court failed to address any of the profound implications which would result from such a legal fiction and is, for that reason, unpersuasive. We note also that

the *Grodin* court's decision regarding the application of the partial abrogation of the parental immunity doctrine has been called incorrect. *Mayberry v. Pryor* (1984), 134 Mich. App. 826, 832-33, 352 N.W.2d 322, 324-25.

This court has never been asked to decide if, by becoming pregnant, a woman exposes herself to a future lawsuit by or on behalf of the fetus which will become her child. At one time a fetus was seen as only a part of the woman who was the mother of the child. When someone tortiously injured a pregnant woman and her fetus sustained injury as a result, no legal protection would have been extended to the subsequently born child. Today, when the tortious acts of another towards a woman who is or may become pregnant harms a fetus, there is a legally cognizable cause of action for the injury to both the woman and the subsequently born child. *Renslow v. Mennonite Hospital* (1977), 67 Ill. 2d 348.

In the path which some courts have taken on the road which has recognized recovery for a child for injuries inflicted on it as a fetus, there has been an articulation of a "legal right to begin life with a sound mind and body." (See *Evans v. Olson* (Okla. 1976), 550 P.2d 924, 927; *Womack v. Buchhorn* (1971), 384 Mich. 718, 725, 187 N.W.2d 218, 222; *Smith v. Brennan* (1960), 31 N.J. 353, 364-65, 157 A.2d 497, 503.) The articulation of this right to recover against third-person tortfeasors has served to emphasize that it is not just the pregnant woman alone who may be harmed by the tortious act of another but also the fetus, whose injuries become apparent at its birth.

It is clear that the recognition of a legal right to begin life with a sound mind and body on the part of a fetus which is assertable after birth against its mother would have serious ramifications for all women and their families, and for the way in which society views women and women's reproductive abilities. The recognition of such a right by a fetus would necessitate the recognition

of a legal duty on the part of the woman who is the mother; a legal duty, as opposed to a moral duty, to effectuate the best prenatal environment possible. The recognition of such a legal duty would create a new tort: a cause of action assertable by a fetus, subsequently born alive, against its mother for the unintentional infliction of prenatal injuries.

It is the firmly held belief of some that a woman should subordinate her right to control her life when she decides to become pregnant or does become pregnant: anything which might possibly harm the developing fetus should be prohibited and all things which might positively affect the developing fetus should be mandated under penalty of law, be it criminal or civil. Since anything which a pregnant woman does or does not do may have an impact, either positive or negative, on her developing fetus, any act or omission on her part could render her liable to her subsequently born child. While such a view is consistent with the recognition of a fetus' having rights which are superior to those of its mother, such is not and cannot be the law of this State.

A legal right of a fetus to begin life with a sound mind and body assertable against a mother would make a pregnant woman the guarantor of the mind and body of her child at birth. A legal duty to guarantee the mental and physical health of another has never before been recognized in law. Any action which negatively impacted on fetal development would be a breach of the pregnant woman's duty to her developing fetus. Mother and child would be legal adversaries from the moment of conception until birth.

The error that a fetus cannot be harmed in a legally cognizable way when the woman who is its mother is injured has been corrected; the law will no longer treat the fetus as only a part of its mother. The law will not now make an error of a different sort, one with enormous im-

plications for all women who have been, are, may be, or might become pregnant: the law will not treat a fetus as an entity which is entirely separate from its mother.

In *Renslow v. Mennonite Hospital* (1977), 67 Ill. 2d 348, the plurality reaffirmed the "utility of the concept of duty as a means by which to direct and control the course of the common law," and went on to say that "there is a right to be born free from prenatal injuries foreseeably caused by a breach of duty to the child's mother" (67 Ill. 2d at 357). It is foreseeable that any act or omission by a pregnant woman could impact on fetal development. The plurality in *Renslow* quoted with approval Dean Leon Green's observation:

> " ' " '[H]owever valuable the foreseeability formula may be in aiding a jury or judge to reach a decision on the negligence issue, it is altogether inadequate for use by the judge as a basis of determining the duty issue and its scope. The duty issue, being one of law, is broad in its implication; the negligence issue is confined to the particular case and has no implications for other cases. There are many factors other than foreseeability that may condition a judge's imposing or not imposing a duty in the particular case \*\*\*.' Green, *Foreseeability in Negligence Law*, 61 Colum. L. Rev. 1401, 1417-18." ' (56 Ill. 2d 372, 375.)" (67 Ill. 2d at 354.)

It is also clear that causation alone cannot result in the recognition of duty because "in a very real sense the consequences of an act go forward to eternity, and back to the beginning of the world. Any attempt to impose responsibility on such a basis would result in infinite liability for all wrongful acts, which would 'set society on edge and fill the courts with endless litigation.' " Prosser, *Palsgraf Revisited*, 52 Mich. L. Rev. 1, 24 (1953).

If a legally cognizable duty on the part of mothers were recognized, then a judicially defined standard of conduct would have to be met. It must be asked, By what judicially defined standard would a mother have

her every act or omission while pregnant subjected to State scrutiny? By what objective standard could a jury be guided in determining whether a pregnant woman did all that was necessary in order not to breach a legal duty to not interfere with her fetus' separate and independent right to be born whole? In what way would prejudicial and stereotypical beliefs about the reproductive abilities of women be kept from interfering with a jury's determination of whether a particular woman was negligent at any point during her pregnancy?

Holding a third person liable for prenatal injuries furthers the interests of both the mother and the subsequently born child and does not interfere with the defendant's right to control his or her own life. Holding a mother liable for the unintentional infliction of prenatal injuries subjects to State scrutiny all the decisions a woman must make in attempting to carry a pregnancy to term, and infringes on her right to privacy and bodily autonomy. This court has said that "the judiciary will *** exercise its traditional role of drawing rational distinctions, consonant with current perceptions of justice, between harms which are compensable and those which are not." (*Renslow v. Mennonite Hospital*, 67 Ill. 2d at 358.) Logic does not demand that a pregnant woman be treated in a court of law as a stranger to her developing fetus.

It would be a legal fiction to treat the fetus as a separate legal person with rights hostile to and assertable against its mother. The relationship between a pregnant woman and her fetus is unlike the relationship between any other plaintiff and defendant. No other plaintiff depends exclusively on any other defendant for everything necessary for life itself. No other defendant must go through biological changes of the most profound type, possibly at the risk of her own life, in order to bring forth an adversary into the world. It is, after all, the whole life of the pregnant woman which impacts on the develop-

ment of the fetus. As opposed to the third-party defendant, it is the mother's every waking and sleeping moment which, for better or worse, shapes the prenatal environment which forms the world for the developing fetus. That this is so is not a pregnant woman's fault: it is a fact of life.

In practice, the reproduction of our species is necessarily carried out by individual women who become pregnant. No one lives but that he or she was at one time a fetus in the womb of its mother. Pregnancy does not come only to those women who have within their means all that is necessary to effectuate the best possible prenatal environment: any female of child-bearing age may become pregnant. Within this pool of potential defendants are representatives of all socio-economic backgrounds: the well-educated and the ignorant; the rich and the poor; those women who have access to good health care and good prenatal care and those who, for an infinite number of reasons, have not had access to any health care services.

The circumstances in which each individual woman brings forth life are as varied as the circumstances of each woman's life. Whether a standard of care to which a woman would be held while pregnant should vary according to whether a pregnancy was planned or unplanned, to whether a woman knew she was pregnant soon after conception or only knew after several months, to whether she had the financial resources with which to access the best possible medical care available or was unable to get any prenatal care are all questions which deserve much thought and reflection.

There are far-reaching issues of public policy inherent in the question whether to recognize a cause of action in tort for maternal prenatal negligence. Judicial scrutiny into the day-to-day lives of pregnant women would involve an unprecedented intrusion into the privacy and

autonomy of the citizens of this State. This court holds that if a legally cognizable duty on the part of pregnant women to their developing fetuses is to be recognized, the decision must come from the legislature only after thorough investigation, study and debate.

In a different context, our appellate court stated, "Although the legal questions unfolded are new, the problem is not; the social conditions producing the problem have existed since the advent of man." (*Zepeda v. Zepeda* (1963), 41 Ill. App. 2d 240, 262.) In holding that no cause of action will lie for maternal prenatal negligence, this court emphasizes that we in no way minimize the public policy favoring healthy newborns. Pregnant women need access to information about the risks inherent in everyday living on a developing fetus and need access to health care for themselves and their developing fetuses. It is, after all, to a pregnant woman's advantage to do all she can within her knowledge and power to bring a healthy child into this world. The way to effectuate the birth of healthy babies is not, however, through after-the-fact civil liability in tort for individual mothers, but rather through before-the-fact education of all women and families about prenatal development.

A cause of action by a fetus against its mother for the unintentional infliction of prenatal injuries is denied. The cause is remanded to the circuit court of Cook County for proceedings consistent with this opinion.

*Appellate court reversed;*
*circuit court affirmed;*
*cause remanded.*

JUSTICE STAMOS took no part in the consideration or decision of this case.