McCann, J.

INTRODUCTION

The plaintiff, Andre Remy (Remy) by her parent and next friend Reginald Remy is represented by Michael F. Mahoney, Esq., 218 Blossom Street Extension, Lynn, Massachusetts 01902; the defendant Christine MacDonald (MacDonald) by George E. Clancy, Esq., Fuller, Rosenberg, Palmer & Beliveau, 340 Main Street, Suite 817, Worcester, Massachusetts 01608; and Dennis Ellis and Anna Ellis by David V. Shablin, Esq., Law Offices of Stephen Anderson, 100 North Parkway H103, Worcester, Massachusetts 01605.
The complaint of Remy is in three counts: (I) — negligence against her mother Christine MacDonald; (II)— negligence against Anna Ellis; (III) — negligence against Dennis Ellis. MacDonald filed an answer of general denial and eight affirmative defenses. The third affirmative defense alleges plaintiff cannot recover against McDonald as a matter of law. The Ellises filed a cross claim against MacDonald for contribution. MacDonald filed a Motion for Summary Judgment against Remy on the grounds that (1) Massachusetts does not recognize the right of a viable fetus to bring a cause of action, after birth, against the child’s mother for injuries inflicted upon the child, in útero; and (2) the action is barred by the doctrine of parent-child immunity.

BACKGROUND

Remy brings a negligence action against her mother, MacDonald. The claim arises out of a motor vehicle accident that occurred on January 7, 1999 at approximately 12:45 p.m. at the intersection of Institute Road and Wachusett Street, Worcester, Massachusetts. MacDonald was driving her car. Anna Ellis was operating the motor vehicle owned by her husband, Dennis Ellis, which collided with the motor vehicle operated by MacDonald.
At the time of the accident, Remy was en ventre sa mere when her mother was injured. MacDonald was thirty-two weeks pregnant at the time. Remy claims that both her mother and Anna Ellis were negligent in the operation of their respective motor vehicles. She further claims that the injuries her mother sustained as a result of her own negligence and the negligence of Anna Ellis caused her premature birth two months before her due date. Remy further alleges that as a result of her mother’s negligence, she was born prematurely; she was hospitalized for twenty-three days; she had trouble breathing; and she was diagnosed with Reactive Airway Disease, Respiratory Syncytial Virus and bronchiolitis resulting in constant colds, fevers, viral illnesses, respiratory distress, pneumonia, and asthma; and she continues to suffer from respiratory and other related ailments.
Remy brought suit against her mother as well as the Ellises. The issue raised is whether a minor plaintiff, who was en ventre sa mere (a viable seven-month old fetus) at the time of the accident, can bring suit after birth against her mother for injuries caused by her mother’s alleged negligence.

DISCUSSION

In the law of negligence, whether a duty is owed is a question of law. There can be no liability unless a legal duty is owed. Yakubowicz v. Paramount Pictures Corp., 404 Mass. 624 (1988). There appear to be no Massachusetts cases which recognized a legal duty of a pregnant woman to her unborn fetus. In determining whether the law should provide a legal duty, a court must look to the existing social values and customs and to appropriate policy. Yakubowicz v. Paramount Pictures Corp., supra, Daugherty v. Ernest M. Crest, Inc., 353 F.Sup. 561 (1994).
This Court found three cases from other jurisdictions with markedly similar facts to the present case: Stallman v. Youngquist, 125 Ill.2d 267, 531 N.E.2d 355 (1988); Chenault v. Huie, 989 S.W.2d 474 (1999 Tex. *484 App.), Lexus 2824 (1999); Bonte v. Bonte, 136 N.H. 286, 616 Atlantic Ap.2d 464 (1992).
In Stallman, Lindsey Stallman brought suit by her father and next friend against her mother Bari Stall-man and a co-defendant, Youngquist for prenatal injuries allegedly sustained by the plaintiff during an automobile collision between Bari Stallman’s automobile and the automobile driven by Youngquist. Bari Stallman was approximately five months pregnant with the plaintiff and was on her way to a restaurant when the collision occurred. Lindsey Stallman was subsequently born alive and alleged injuries due to the negligence of her mother. In Chenault, the defendant used illegal narcotics during the course of her pregnancy. When the child was born she was found to have both cocaine and alcohol in her blood and was diagnosed as having cerebral palsy attributable to her mother’s drug use. Suit was brought by the conservator of the child after her birth. In the Bonte case, the defendant mother, Sharon Bonte, was seven months pregnant. She was struck by a car crossing the street. Stephanine Bonte, the plaintiff, was delivered by emergency cesarian section. She had catastrophic brain damage and was diagnosed as having cerebral palsy attributable to the accident. Stephanine’s father brought suit as next friend against the defendant mother alleging negligence by failing to cross the street properly and by failing to use a designated crosswalk. In each of the three cases the after born child was en ventre sa mere at the time of the alleged negligence of the birth mother, and suit was commenced by each after birth.
Stallman[1] and Chenault[2] both allowed the mother’s motion for summary judgment and denied recovery against the mother. There were no dissents in either case. Bonte was a three-to-two New Hampshire Supreme Judicial Court decision. Two justices dissented. It held that a child born alive has a cause of action in tort against his or her mother for the mother’s negligent conduct that resulted in prenatal injury.
Tort law does recognize a cause of action against a third party based on injuries sustained by a fetus while in útero, both in Massachusetts as well as other states. Chenault v. Huie, supra; Delgardo v. Yandell, 468 S.W.2d 475 (Tex. 1971); McNulty v. McDowell, 415 Mass. 369 (1993); Peyton v. Abbott Labs., 386 Mass. 540 (1982); and Stallman v. Youngquist, supra.
However, the Supreme Judicial Court has indicated that cases of this nature would be treated on a case-by-case basis. The Court has yet to address the issue of an unborn fetus’s right to sue his or her mother after birth.
There is a unique symbiotic relationship between a mother and her unborn child. None other is so completely dependent upon another for life itself. It is a mother’s ever waking and sleeping moment which, for better or for worse, shapes the prenatal environment which forms the world for a developing fetus, and is of such magnitude that imposing a legal duty on a pregnant woman to her unborn child gives rise to public policy concerns. Chenault v. Huie, supra; Stallman v. Youngquist, supra.
To create a legal duty on a pregnant woman to her unborn child, would present a court with problematic and impossible tasks of determining when the duty arises and how the nature of the duty is to be defined. Social values, customs and policies suggest that courts should not create a legal duty upon a pregnant woman to her unborn child. A woman could be pregnant for weeks, or even months, before realizing that she is in fact pregnant. Whether she knows she is pregnant or not, her pregnancy may depend on varying factors such as her general health, her general physical condition, her emotional state, and information regarding the best and healthiest way to conduct her life while pregnant. All of these must be balanced against the personal choice of a pregnant woman as to how she will conduct herself during her pregnancy. Her decisions maybe subjective, private and personal and may very well depend upon a variety of factors including religious beliefs, social norms, economic status, age, maturity, cultural background, educational level and access to or lack of access to health care. Allowing suit by an after-born child against her mother for en ventre sa mere injuries would open unlimited avenues, i.e. commencing suit against a mother if she fell while pregnant; if she smoked while pregnant; if she consumed alcoholic beverages while pregnant; if she took prescription medicine; if she did not maintain what might be considered a healthy diet or manner during pregnancy; and a myriad of other situations. Civil liability, after the fact of birth, rather than discouraging conduct so difficult to define in terms of duty, may unwittingly have the opposite negative effect of women fearing civil liability so that they may not reveal critical facts about their condition to their physicians resulting in less than adequate prenatal care. Judicial scrutiny into the day-by-day lives of a pregnant woman would involve an unprecedented intrusion into the privacy and the autonomy of citizens, including the decision making process of eveiy pregnant woman.
As can be seen, the creation of a legal duty on a pregnant woman to her unborn child would present a court with the problematic and impossible task of determining when the duty arises and of defining the nature of that duty. As noted, there are no cases decided by the Supreme Judicial Court on this issue. Some have dealt with abrogation of parental immunity or spousal immunity. In Lewis v. Lewis, 370 Mass. 619, 351 N.E.2d 526 (1976), the court did away to a limited degree with interspousal immunity and allowed suit between spouses for negligence. However, the court limited the case to a motor vehicle accident and the amount of the policy. The language of the court is instructive in that it stated in its decision “further definition of the scope of the new rule of interspousal *485 tort liability will await development in future cases.” In Sorenson v. Sorenson, 369 Mass. 350, 339 N.E.2d 907 (1975), the doctrine of parental immunity was abrogated to the extent of a parent’s automobile liability insurance coverage. The language of the Supreme Judicial Court in that case is further instructive in that it pointed out that by abrogating parental immunity in the particular circumstances of the case, the court did not create a new legal duty when none previously existed. Rather, it merely removed the barrier to the enforcement of a liability between a parent and a child. Furthermore, the court also pointed out “we are mindful that there may be parental exercises of discretion and authority which should be immune from scrutiny in the court of law.” Sorenson v. Sorenson, 369 Mass. at 366. This court rules that the facts of this case present a situation where parental exercises of discretion and authority should be immune from the scrutiny of a court of law. It would seem that if a legally cognizable duty on the part of a pregnant woman to their developing fetuses is to be recognized, that decision must come either from the Legislature as a result of a thorough investigation, study and debate; or from the Supreme Judicial Court by recognizing such a duty in this area in which that court appears to look at each such case separately.
For the reasons stated, the Court ALLOWS the defendant, Christine McDonald’s Motion for Summary Judgment.
In view of the action taken by the Court on the issue of duty, it is not necessary for this Court to reach the second issue which relates to parent-child immunity.
The defendant’s Motion for Summary Judgment is ALLOWED. Count I of Plaintiffs complaint is DISMISSED as to MacDonald. The cross claim is a claim by Ellises for contribution by McDonald. Inasmuch as the underlying claim of Remy against McDonald is dismissed, the cross claim claiming contribution is also DISMISSED.
ORDER
Defendant, Christine McDonald’s Motion for Summary Judgment is ALLOWED, and count I is DISMISSED. The cross claim of Dennis Ellis and Anna Ellis against Christine MacDonald is DISMISSED.

 Stallman was before the Supreme Court of Ilinois. This case has been before the circuit court of Cook County twice, and also twice before the appellate court, in Stallman I (129 Ill.App.3d 859) and Stallman II (152 Ill.App.3d 683). The Stallman II court reversed the circuit court, which had granted defendant’s motion for summary judgment. Defendant filed a petition for leave to appeal from the decision in Stallman II pursuant to Supreme Court Rule 315 (107 Ill.2dR. 315), which was granted.

 Chenautt was before the Court of Appeals of Texas, Fifth District.