Andre Remy[1] *vs.* Christine MacDonald.

Worcester. November 4, 2003. - January 12, 2004.

Present: Marshall, C.J., Greaney, Ireland, Spina, Cowin, Sosman, & Cordy, JJ.

*Parent and Child,* Duty to prevent harm. *Negligence,* Parent, Motor vehicle, Duty to prevent harm.

This court concluded that a child, born alive, could not maintain a cause of action in tort against her mother for personal injuries incurred before birth because of the mother's negligence, where no set of clear existing social values and customs existed, and no settled social policy could be identified, to justify the imposition of a duty of care on a pregnant woman toward her unborn child to refrain from negligent conduct that might result in physical harm to that child, and contrary decisions in three other jurisdictions were unpersuasive [676-680]; further, the duty of the operator of a motor vehicle to operate her automobile in a reasonably careful and prudent manner did not provide a basis for extending the mother's exposure to liability to include negligence for her child's prenatal injuries [680-683].

Civil action commenced in the Superior Court Department on April 13, 2001.

The case was heard by *John S. McCann,* J., on a motion for summary judgment, and separate and final judgment was entered by *Ernest B. Murphy,* J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Michael F. Mahoney* for the plaintiff.

*George E. Clancy* (*James P. McKenna* with him) for the defendant.

Greaney, J. This case presents the issue whether a child, born alive, can maintain a cause of action in tort against her mother for personal injuries incurred before birth because of the mother's negligence. The plaintiff seeks to recover damages based on the alleged negligence of her mother, the defendant Christine MacDonald, in connection with a two-car automobile

[1] By her father and next friend, Reginald Remy.

accident that occurred when the plaintiff was in utero.[2] A judge in the Superior Court concluded, as a matter of law, that there could be no liability on the part of the defendant and allowed her motion for summary judgment.[3] The plaintiff appealed, and we transferred the case to this court on our own motion. We now affirm the judgment.

The summary judgment record, viewed in the light most favorable to the plaintiff, see *Coveney* v. *President & Trustees of the College of the Holy Cross*, 388 Mass. 16, 17 (1983), establishes the following facts. At approximately 12:45 P.M. on January 7, 1999, Christine MacDonald was operating a motor vehicle at the intersection of Institute Road and Wachusett Street in Worcester when her vehicle was struck by a motor vehicle owned by Dennis Ellis and operated by Anna Ellis. MacDonald was thirty-two weeks pregnant with the plaintiff at that time, and the plaintiff was born, by emergency caesarian section, four days later. The plaintiff was hospitalized for twenty-three days and experienced multiple breathing difficulties associated with her premature birth. In the first few years of her life, she has had, and continues to suffer from, respiratory distress and asthma. The plaintiff alleges (and we accept as fact, for purposes of this decision) that her mother's negligent driving caused the accident that led to the plaintiff's premature birth and subsequent related injuries. The plaintiff contends that a jury could find her mother liable in negligence for the injuries she has incurred, and, therefore, the judge improperly allowed summary judgment.

1. In order to succeed on a claim of negligence, a plaintiff first must establish that the defendant owed a legal duty of care. See *Cottam* v. *CVS Pharmacy*, 436 Mass. 316, 320 (2002); *Davis* v. *Westwood Group*, 420 Mass. 739, 742-743 (1995); *Mc-Nulty* v. *McDowell*, 415 Mass. 369, 371 (1993). We must decide

---

[2]The plaintiff's complaint is not included in the record before us. Other documents that are included in the record, however, make clear that, in addition to one claim of negligence against her mother, the plaintiff's complaint asserted two claims of negligence against Dennis and Anna Ellis, respectively, the owner and operator of the second automobile involved in the accident.

[3]Final judgment, entered under Mass. R. Civ. P. 54 (b), 365 Mass. 820 (1974), dismissed the plaintiff's claim of negligence against the defendant, as well as a cross claim filed by the Ellises against the defendant for contribution. The Ellises filed a memorandum in opposition to the defendant's summary judgment motion, but they are not parties to this appeal.

whether a pregnant woman owes a legal duty of care to her unborn child to refrain from negligent conduct that may result in physical harm to that child. If no such duty exists, a claim of negligence cannot be brought.

Whether a duty exists is a question of common law, to be determined by "reference to existing social values and customs and appropriate social policy." *Cremins* v. *Clancy*, 415 Mass. 289, 292 (1993), and cases cited. As a general principle of tort law, every actor has a duty to exercise reasonable care to avoid physical harm to others. See Restatement (Second) of Torts § 302 comment a (1965) ("In general, anyone who does an affirmative act is under a duty to others to exercise the care of a reasonable man to protect them against an unreasonable risk of harm to them arising out of the act"). There are a limited number of situations, however, in which the other legal requirements of negligence may be satisfied, but the imposition of a precautionary duty is deemed to be either inadvisable or unworkable. See, e.g., *Luoni* v. *Berube*, 431 Mass. 729, 731 (2000) (social host owes no duty of reasonable care to protect guests from fireworks set by third party); *Cremins* v. *Clancy*, *supra* at 292, 294 (social host who has not provided liquor owes no duty of reasonable care to protect travelers on highway from intoxicated guest); *Wallace* v. *Wilson*, 411 Mass. 8, 12 (1991) (parent not responsible for injuries incurred by guest at "young person's" party, even though parent was aware of drinking); *Schofield* v. *Merrill*, 386 Mass. 244, 245 (1982) (affirming traditional rule that landowner owes adult trespasser no duty of reasonable care). This is such a case.

The judge ruled that the defendant did not owe a duty of care to the unborn plaintiff. In his memorandum of decision, the judge noted that no Massachusetts appellate court has recognized the existence of such a duty. Guiding himself by cases in other jurisdictions, the judge reasoned that, due to a "unique symbiotic relationship" between a mother and her unborn child, the judicial creation of such a duty, in this case, could raise a multitude of problematic issues, as well as potentially invade the personal choice of pregnant women. We, essentially, agree.

We begin by taking judicial notice of the fact that, during the period of gestation, almost all aspects of a woman's life may

have an impact, for better or for worse, on her developing fetus. A fetus can be injured not only by physical force, but by the mother's exposure, unwitting or intentional, to chemicals and other substances, both dangerous and nondangerous, at home or in the workplace, or by the mother's voluntary ingestion of drugs, alcohol, or tobacco. A pregnant woman may place her fetus in danger by engaging in activities involving a risk of physical harm or by engaging in activities, such as most sports, that are generally not considered to be perilous. A pregnant woman may jeopardize the health of her fetus by taking medication (prescription or over-the-counter) or, in other cases, by not taking medication. She also may endanger the well-being of her fetus by not following her physician's advice with respect to prenatal care or by exercising her constitutional right not to receive medical treatment. See *Norwood Hosp.* v. *Munoz,* 409 Mass. 116, 122 (1991).

Recognizing a pregnant woman's legal duty of care in negligence to her unborn child would present an almost unlimited number of circumstances that would likely give rise to litigation. Courts would be challenged to refine the scope of such a duty, including the degree of knowledge expected of a mother in order to pinpoint when such a duty would arise (e.g., at the point of pregnancy; at the point of awareness of pregnancy; or at the point of awareness that pregnancy is a possibility) or the particular standard of conduct to which a reasonably careful pregnant woman, in a single case, should be held. There is no consensus on if and when a duty such as the one sought by the plaintiff should be imposed, and there is considerable debate with respect to a mother's civil liability for injuries to her unborn fetus, including disagreement over whether the rights of the child should supersede the legal rights of the mother. See generally Johnsen, Shared Interests: Promoting Healthy Births Without Sacrificing Women's Liberty, 43 Hastings L.J. 569 (1992); Beal, "Can I Sue Mommy?" An Analysis of a Woman's Tort Liability for Prenatal Injuries to her Child Born Alive, 21 San Diego L. Rev. 325 (1984). No set of clear existing social values and customs exist, and no settled social policy can be identified, to justify the maintenance of the present lawsuit.

Two appellate courts in other jurisdictions, considering the broad question before us, have declined to recognize a mother's duty of care toward her unborn child. See *Stallman* v. *Young-quist*, 125 Ill.2d 267, 270 (1988); *Chenault* v. *Huie*, 989 S.W.2d 474, 476 (Tex. Ct. App. 1999). In the *Stallman* decision, the Supreme Court of Illinois reviewed the modern trend of case law allowing a child to bring an action for prenatal injuries inflicted by third persons and acknowledged in the cases some articulation of a principle that a child has a "legal right to begin life with a sound mind and body." *Id.* at 275, quoting *Evans* v. *Olson*, 550 P.2d 924, 927 (Okla. 1976); *Womack* v. *Buchhorn*, 384 Mich. 718, 725 (1971); *Smith* v. *Brennan*, 31 N.J. 353, 364-365 (1960). The court concluded, however, that "[l]ogic does not demand that a pregnant woman be treated in a court of law as a stranger to her developing fetus. It would be a legal fiction to treat the fetus as a separate legal person with rights hostile to and assertable against its mother." *Stallman* v. *Youngquist, supra* at 278. That fiction, we add, could have profound social implications and far reaching unforeseen legal consequences.

The Texas Court of Appeals, in *Chenault* v. *Huie, supra,* agreed with the result in the *Stallman* case. The court suggested that the asserted duty could have a detrimental impact on women's activities before pregnancy. See *id.* at 477. The court also noted that creation of such a duty would confront a jury "with questions calling for answers that are inherently value laden and, therefore, not subject to objective or convincing resolution." *Id.* at 478.

There are three appellate decisions in jurisdictions that have allowed a claim brought against one's mother for negligently inflicted prenatal injuries. See *National Cas. Co.* v. *Northern Trust Bank*, 807 So. 2d 86, 87 (Fla. Dist. Ct. App. 2002) (permitting claims only in context of motor vehicle accidents, up to limit of insurance); *Grodin* v. *Grodin*, 102 Mich. App. 396, 400-401 (1980) (permitting claim based on mother's ingestion of drug that caused child, when born, to develop discolored teeth); *Bonte* v. *Bonte*, 136 N.H. 286, 289 (1992) (permitting claim based on mother's failure to use reasonable care in crossing

street).[4] These decisions uniformly were premised on the assumption that, because an unborn child, after birth, may recover for prenatal injuries negligently inflicted by another, and because parental immunity had been abolished in those jurisdictions, logic demands that a child's mother should bear the same liability for injurious, negligent conduct to a fetus as would any third party. See *National Cas. Co. v. Northern Trust Bank, supra; Bonte v. Bonte, supra* at 288-289. See also *Grodin v. Grodin, supra* (remanding case for determination whether defendant's decision to ingest drug was within "reasonable exercise of parental discretion" exception to Michigan's no-immunity rule). The courts undertook no serious analysis of the unique relationship between a pregnant woman and the fetus she carries. The courts also failed to address the collateral social and other impacts of the imposition of a legal (as opposed to a moral) obligation that would hold a pregnant woman to a standard of care towards her unborn child. But see *Bonte v. Bonte, supra* at 291-293 (Brock, C.J., dissenting, with whom Batchelder, J., joined). Because it is on these considerations that our decision rests, we find these cases unpersuasive.

2. The plaintiff contends that her mother, as the operator of a motor vehicle, had an existing duty of care that extended to all other persons to operate her automobile in a reasonably careful and prudent manner, see *Buda v. Foley*, 302 Mass. 411, 413 (1939), and argues that, based on this existing duty, there is no legal reason, particularly in the context of motor vehicle negligence, to distinguish between an unborn fetus and a child already born. We do not agree.

This court has recognized the right of a plaintiff to maintain an independent cause of action for prenatal injuries sustained as the result of the negligence of another. See *Payton v. Abbott Labs*, 386 Mass. 540, 563 (1982) (allowing claim against drug manufacturer for prenatal injuries caused by mother's ingestion

---

[4]The New Hampshire decision was issued by a divided court, with two dissenting Justices arguing that the court had "failed to fully appreciate the extent of the intrusion into the privacy and physical autonomy rights of women . . . and [had] ignored the profound implications that such a rule of law holds for all women in this State who are, or may become, pregnant." *Bonte v. Bonte*, 136 N.H. 286, 291 (1992) (Brock, C.J., dissenting, with whom Batchelder, J., joined).

of drug). "If the tortious conduct and the legal causation of the harm can be satisfactorily established, there may be recovery for any injury occurring at any time after conception." *Id.*, quoting Restatement (Second) of Torts, § 869 comment d (1979). Moreover, a viable fetus,[5] whether or not born alive, is considered a "person" for purposes of our wrongful death statute, G. L. c. 229, § 2.[6] See *Mone* v. *Greyhound Lines, Inc.*, 368 Mass. 354 (1975) (recovery for stillborn if fetus viable at time of injury); *Torigian* v. *Watertown News Co.*, 352 Mass. 446, 448 (1967) (cause of action for wrongful death includes recovery for death of fetus not viable at time of injury, but born alive). But see *Thibert* v. *Milka*, 419 Mass. 693, 695 (1995) (no independent cause of action for death of stillborn child not viable at time of accident).

It is true that, had the plaintiff been injured while MacDonald was a passenger in an automobile negligently operated by another, the plaintiff (whether or not she survived) would have been able to recover damages against the operator of the vehicle. There is also no question that, had the plaintiff been born at the time of the accident, even if only one hour of age, she would have been able to recover against MacDonald for injuries sustained as a result of her mother's negligence.[7] See *Stamboulis* v. *Stamboulis*, 401 Mass. 762, 765 (1988) ("no absolute

---

[5] A "viable fetus" is a fetus "so far formed and developed that if then born it would be capable of living." *Commonwealth* v. *Crawford*, 430 Mass. 683, 689 (2000), quoting *Torigian* v. *Watertown News Co.*, 352 Mass. 446, 448 (1967).

[6] A viable fetus also is a "person" for purposes of our motor vehicle homicide statute, G. L. c. 90, § 24G. See *Commonwealth* v. *Cass*, 392 Mass. 799, 806 (1984) (rejecting common-law rule that person must be "born alive" to be protected by criminal law, stating "[m]edical science now may provide competent proof as to whether the fetus was alive at the time of a defendant's conduct and whether his conduct was the cause of death").

[7] Our decision does not rest on principles of parental immunity, which we abrogated in *Sorensen* v. *Sorensen*, 369 Mass. 350, 365 (1975), in the context of an automobile tort action brought by a minor child against a parent, to the extent that damages were paid from motor vehicle liability insurance, and later abolished in the context of all negligence claims in *Stamboulis* v. *Stamboulis*, 401 Mass. 762, 765 (1988). The concept of parental immunity provided a barrier to the enforcement of liability, but its abrogation did "not create a new legal duty where none previously existed." *Sorensen* v. *Sorensen, supra* at 366. Similarly, this court's repeated "reject[ion of] the status of a party to the tort as a controlling element in determining liability for negligence," *Stam-*

curtain of immunity protects a parent who negligently causes injury to his or her minor child"); *Sorensen* v. *Sorensen*, 369 Mass. 350, 365 (1975). Our cases affirm the principle that "[c]hildren enjoy the same right to protection and to legal redress for wrongs done them as others enjoy." *Id.* at 359. There is nothing in our statutes or case law, however, that addresses the situation before us.

We reject the plaintiff's argument that a rule permitting a child to recover for negligent injuries inflicted before birth by the child's mother could be restricted solely to a viable fetus claiming negligence in an automobile accident. Massachusetts law provides that there is nothing special about injuries incurred in automobile accidents that sets them apart from other negligently caused injuries, and the limitation sought by the plaintiff would be inconsistent with that law. See *Stamboulis* v. *Stamboulis*, *supra* at 764 ("A distinction based on motor vehicle versus non-motor vehicle accidents . . . has no rational justification"). The presence of automobile liability insurance does not create liability where none previously existed. See *id.* Further, and more importantly, there is no meaningful way to limit such a rule to automobile accidents cases. It would be only a matter of time before the rule could be extended to a myriad of situations that would make pregnant women liable to their viable fetuses for all manner of allegedly negligent conduct.

We agree with the general principle expressed in Restatement (Second) of Torts § 869 (1979), that "[o]ne who tortiously causes harm to an unborn child is subject to liability to the child for the harm if the child is born alive." The quoted language emphasizes that it is not just a pregnant woman alone who may be harmed by the tortious act of a third party, but also the fetus, whose injuries become apparent at its birth. See *Stallman* v. *Youngquist*, *supra* at 275. There is nothing in the Restatement text, or in comments to the text, to indicate that the drafters of § 869 intended to suggest a legal right, never before recognized in law, for a fetus to bring a claim of negligence against its own mother. As was stated in the *Stallman* case, *id.*

boulis v. *Stamboulis*, *supra* at 764, has had a broad impact on the issue of immunity from suit but is not determinative on the issue of duty.

at 276: "The recognition of [a legal duty on the part of the mother towards her fetus] would create a new tort: a cause of action assertable by a fetus, subsequently born alive, against its mother for the unintentional infliction of prenatal injuries." We have said that "[t]he evolution of the law of negligence has always required courts to make hard (and often fine) distinctions, and to assess and determine, in considering the existence of a duty, contemporary attitudes and public policy." *Cyran* v. *Ware*, 413 Mass. 452, 460 (1992). We conclude that there are inherent and important differences between a fetus, in utero, and a child already born, that permits a bright line to be drawn around the zone of potential tort liability of one who is still biologically joined to an injured plaintiff.

*Judgment affirmed.*