Agnes, Peter W., J.
Background
Plaintiff, Daniel Bash (“Mr. Bash”), as co-administrator of his daughter’s estate, brought a wrongful death action against Clark University (“Clark”) and nine individuals for the death of his daughter, Michele Claudia Bash (“Ms. Bash”). Michele Bash died on campus after voluntarily consuming heroin while she was a freshman at Clark in Worcester, Massachusetts. Defendant Matthew Book (“Mr. Book”) was a freshman at the time of Ms. Bash’s death and allegedly supplied Michele with heroin. The other eight individual defendants, administrators at Clark at the time at Ms. Bash’s death, were alleged to have been negligent in taking preventative steps necessary to protect Ms. Bash and for misrepresenting to her parents that she would be provided with a safe and healthy environment while at Clark.
In a Memorandum and Order dated November 20, 2006, this court dismissed all claims against four of the eight individual defendant administrators at Clark: John Bassett, then President of Clark; Erin Ellison, then Bash’s academic probation advisor; Julianne Ohotnicky, then Clark’s Associate Dean of Students; and, Jason Zelesky, then Clark’s Assistant Dean of Students/Wellness Outreach Coordinator. See Bash v. Clark University, Civil No. 06-745A (Worcester Super.Ct. November 20, 2006) (Agnes, J.) [22 Conn. L. Rptr. 84], As to the negligence claims, this court explained that, “while there [was] ample evidence to suggest that Ms. Bash was homesick, or looked mad and upset, without additional facts, the risk of death or serious injury resulting from a drug overdose was not so plainly foreseeable that a special relationship existed between the student and the university.” Id. That, coupled with the unrealistic expectations about the ability of the university officials to protect students from “the dangers associated with the voluntary use of illegal drugs” and the “expanded right of privacy that society has come to regard as the norm in connection with the activities of college students,” precluded a finding of any negligence on the part of the individual defendant administrators at Clark. Id. As to the misrepresentation claims, this court found that a theory of fraudulent misrepresentation failed because it was not properly pled, and a theory of negligent misrepresentation failed because any “generalized statements in promotional materials or brochures [were] too vague and indefinite to give rise to a cause of action.” Id.
Thereafter, Clark University and the other defendant individual administrators: Kristin Conti, then Bash’s dormitory residential life area coordinator; Denise Darrigrand, then Clark’s Dean of Students; Amy Gauthier, then Clark’s Director of Residential Life; Stephen P. Goulet, then Clark’s Chief of Campus Police, have filed a motion to dismiss based, in large part, on this Court’s Order on November 20, 2006.
Also, Mr. Book and the remaining Clark administrators have filed a third-party claim against Plaintiff Daniel Bash and his wife, Emily Bash, seeking indemnification and contribution for their negligence in taking preventative steps necessary to protect their daughter from harm. Plaintiff Daniel Bash and his wife have filed a motion to dismiss all claims asserting that as parents they could not have foreseeably protected their adult daughter from voluntarily ingesting illegal drugs and ultimately harming herself. Emily Bash has also moved to dismiss for a lack of personal jurisdiction.
Discussion
1. This court’s prior decision in this case establishes that Clark University and its university officials and staff did not have a special relationship with Ms. Bash. “After carefully reviewing the circumstances involved in this case and the challenges faced by university officials and staff in attempting to eradicate drug use on college campuses, recognizing a special relationship in this instance would impose on university officials and staff an unreasonable burden that would be at odds with contemporary social values.” See Bash v. Clark University, Civil No. 06-745A (Worcester Super.Ct. November 20, 2006) (Agnes, J.) [22 Mass. L. Rptr. 84]. The additional facts pled in the amended complaint do not indicate that there was an “imminent *401 probability” that Ms. Bash was going to ingest heroin again and tragically die as a result. While the additional facts pled do strongly suggest that Ms. Bash was having personal problems at Clark University, and may have had a problem with alcohol abuse, the record before this court does not permit a finding that Ms. Bash had multiple incidents involving heroin. The fact that she associated with students who had issues with illegal substance abuse also did not make it foreseeable that Ms. Bash was suicidal or had a desire to hurt herself or end her life. The problems Ms. Bash had at Clark University did not place the school administrators on notice of her heroin abuse triggering a special relationship between Ms. Bash and the school administrators.
For purposes of this court’s decision on the amended Third-Party’s Motion to Dismiss, there is reason to question the proposition that at the time of her tragic death, Michele Bash was an adult who was capable of making decisions about the use of alcohol and other drugs, including heroin and prescription drugs. The facts pled in this case suggest that Michele Bash died tragically as a result of a self-induced overdose of heroin. Based on this court’s earlier analysis, nothing in the facts pled in this case would support a determination that Clark University or any of the remaining individual defendants owed her a special duly of care as a result of relationships they had with her prior to her death.
2. There are insufficient contacts between Emily Bash, a non-resident parent, who may have made tuition payments andprovided monetary support to her adult child and the Massachusetts university which the child attended, without more, to subject the non-resident parent to this state’s jurisdiction. This court may exercise personal jurisdiction over a non-resident defendant if the assertion of jurisdiction is (1) authorized by the state’s longarm statute codified at G.L.c. 223A, §3(a)-(h); and, (2) is consistent with basic due process requirements mandated by the United States Constitution. Tatro v. Manor Care, Inc., 416 Mass. 763, 767 (1994); Good Hope Industries, Inc. v. Ryder Scott Co., 378 Mass. 1, 6 (1979). When a defendant challenges the assertion of personal jurisdiction under Massachusetts Civil Procedure 12(b)(2), the plaintiff bears the burden of establishing sufficient facts on which jurisdiction is based. Good Hope Industries, Inc. v. Ryder Scott Co. at 3. Mr. Book has not cited any authority that justifies this court exercising jurisdiction over a non-resident parent whose sole contact with Massachusetts was to provide monetary support for her daughter while she was at college in Massachusetts. While the longarm statute’s “transacting any business in the commonwealth” language is construed broadly, such contacts by an individual are not sufficient to trigger jurisdiction. Contrast Hahn v. Vermont Law School, 698 F.2d 48, 50-51 (1st. Cir. 1983) (held that “the purposeful actions of (Vermont Law School] in mailing to Hahn [law student] in Massachusetts application information and an acceptance letter were sufficient, without more, to constitute transacting business under the broadly construed Massachusetts longarm statute”).
Even if the longarm statute authorized jurisdiction, these contacts would not meet the “fair and reasonable” requirement necessary to require Emily Bash to defend this action in Massachusetts. Good Hope Industries, Inc. v. Ryder Scott Co. at 7.
3. There is no basis in this case for recognition of a special relationship between Ms. Bash and her parents, imposing on her parents a duty of care to take certain preventative steps necessary to protect their adult daughter. Plaintiff, Daniel Bash, and his wife, Emily Bash’s status as parents, without more, does not impose a duty on them to protect and supervise their adult daughter living on a college campus. See Alioto v. Marnell, 402 Mass. 36, 38-39 (1988) (parents were not liable for the negligent torts of their nineteen-year-old son who was living in their home). In Alioto, the parents gave their adult son, who was below the legal drinking age, permission to have a party at their house on the condition he would not drive his car that evening. The son, who had previously been involved with incidents involving the abuse of alcohol, became intoxicated at the party, drove the car later in the night and collided with a car killing another person. The Supreme Judicial Court explained that the son, although below the legal drinking age, was an adult, and the “fortuity of his living in their home” coupled with their status as parents did not impose a duty on them to “supervise and control their emancipated adult son.” Id. at 38-39.
Mr. Book alleges that the Bashes knew that Ms. Bash had problems with alcohol, her schoolwork, and depressive episodes. Moreover, Mr. Book alleges that despite the Bashes’ knowledge of her “self destructive behavior, they allowed her access to her mother’s prescription medications, the intake of which contributed to [Ms. Bash’s] untimely death.” See Defendant/Third-Party Plaintiffs Opposition at pg. 5. As such, Mr. Book is seeking indemnification and contribution from Ms. Bash’s parents.[2]
Ms. Bash was an adult child living on an out-of-state college campus who voluntarily ingested heroin. To impose a duty to supervise and control Ms. Bash would be contrary to contemporary social mores and strikingly at odds with the law in this area. “No better general statement can be made than that the courts will find a duty where, in general, reasonable persons would recognize it and agree that it exists.” Luoni v. Berube, 31 Mass. 729, 735 (2000), quoting W.L. Prosser & W.P. Keeton, Torts §53, at 358-59 (5th ed. 1984). See also Remy v. MacDonald, 440 Mass. 675, 677 (2004) (“If no such duty exists, a claim of negligence cannot be brought”). Reasonable persons would not recognize that parents are caretakers for their *402 adult children. More fundamentally, courts do not find the existence of a duty in circumstances in which the resulting harm was not reasonably foreseeable. Based on the record before me, just as it was not foreseeable that the University and its officials would anticipate Michele’s death by a heroin overdose, there is nothing that suggests this tragic outcome was foreseeable to her parents. A parents’ concern that their adult child may be experimenting with alcohol and illegal substances while at college is perhaps universal, but it does not impose on parents a duty to take any specific action. In these circumstances, to impose a duly on the parents to take certain preventative steps to protect and supervise their daughter, especially when contemporary social values and customs do not generally impose a duty on parents to protect and supervise their adult children, would be unreasonable.
Order
For the foregoing reasons, it is therefore ORDERED that the defendants Clark University, Kristen Conti, Denise Darrigand, Amy Gauthier, and Stephen P. Goulet’s motion to dismiss is ALLOWED and third-party defendants’ motion to dismiss is ALLOWED. Accordingly, plaintiffs motion for reconsideration is DENIED.

At the oral argument in this case, a question arose about the actual cause of Michele Bash’s death and whether there was evidence that her use or abuse of prescription drugs belonging to her parents played any role. This court asked whether the post-mortem toxicology lab report might resolve the issue. Following the argument, the court received two additional pieces of correspondence — a letter from counsel for the defendants in counterclaim (the Bash family) accompanied by the post-mortem examination and laboratory report concerning the decedent, and a letter from counsel for the plaintiff in counterclaim (Mr. Book). The post-mortem report concludes that death was due to “narcotic intoxication.” The accompanying lab results indicate a “positive” result for morphine/codeine with the notation that “semisynthetic opiates such as hydromorphone and hydrocodone may also cause a positive response.” Laboratory Report of U. Mass. Memorial Medical Center, Case CME4-0674 at 2.
The only reference to prescription drug abuse is contained in Book’s Opposition to the Third-Party Defendants’ Motion to Dismiss. However, as counsel for the Bashes point out, Mr. Book denies allegations of prescription drug abuse in his answer to Clark University’s cross claim. The hypothesis advanced by Mr. Book that Michele Bash also had abused narcotic drugs prescribed for her parents is nothing more than a theory and, in any case, does not affect the correctness of the court’s prior analysis.